### JOSEPH CORLISS *v.* J. GREGORY SMITH.

*Vicious  Dog.    Evidence.   Knowledge  of  Agent  Knowledge  of Principal.*

1. When one employs an agent to control his farm and the property thereon, the *agent's knowledge* of the *vicious habits* of a dog owned and kept by the *principal* on the farm is the *knowledge* of the *principal;* and evidence which tends to show that the *agent* had such knowledge, is admissible in an action against the *principal* for damages caused by the dog.
2. Evidence tending to show that the *other servants* knew of the dog's evil propensity is admissible to prove such propensity; and being admissible the court will *not presume* that the jury made an illegitimate use of it.
3. The defendant's agent, without express authority, purchased the dog; and, *there being a conflict in the testimony* as to whether the defendant *ratified the purchase,* it was properly submitted to the jury to decide.
4. Facts that tend to prove an adoption or ratification by the principal, and the rules of law relating to such ratification, stated.

THIS case  was tried at the  September Term, 1880, ROYCE, J., presiding.    Action on the case ; plea, the general issue, and trial by jury.

The plaintiff introduced testimony tending to show that a large dog kept on a farm in St. Albans, owned by the defendant, had the vicious habit of running out furiously at teams as they were passing the defendant's house on said farm, and at the same time barking at the teams so passing, and that the effect had been and was to frighten the teams so passing ; that while he was passing along the highway a mile from the dwelling-house of the defendant, said dog sprang at his horse, and that the horse was frightened, ran, and he, plaintiff, was thrown from his wagon and in-

jured. The plaintiff offered to prove, and was allowed to by the court, that the defendant employed one Rixon as his agent to carry on the farm ; that he, the agent, knew of the vicious habits of the dog ; that on one occasion said dog sprang at a team while passing along in the road upon said farm, in the presence of two of the servant girls, who were in the employ of said Rixon on said farm ; that on another occasion said dog ran after and frightened a team at or near defendant's barn on said farm ; that the person whose team was attacked notified some one whom he saw near said barn of such attack ; but whether the person whom he so notified was an employe of said defendant under said Rixon on the farm, there was no evidence, except that the witness thought he had seen that person at work on the farm before that time, and was confident that he saw the man before that time, during the same summer, spreading manure on said farm. To this testimony defendant objected, but the objection was overruled, and the testimony admitted ; and the court decided that for the purpose of this trial knowledge of the alleged vicious habit by any employe or servant of the defendant upon the farm was knowledge of the defendant ; and to the admission of the testimony and to said decision defendant excepted.

CHARGE OF THE COURT :

It is claimed he made the dog his property by adoption—by adopting this unauthorized act of Rixon's, and that hence he subjected himself to all the liabilities of an owner.

Unfortunately for you, gentlemen, and for the court, there is no rule of law that I am acquainted with that is of universal and general application, settling just what constitutes the adopting of an unauthorized act of an agent. We know there are certain unequivocal acts that a principal may do that in law would amount to an adoption. For instance, if Gov. Smith upon this occasion had been notified by Rixon, that he (Rixon) had purchased this dog of Mr. Brooks for farm use, and the governor had assented to it, that would be an unequivocal act on his part, and would have amounted in law to an adoption of the unauthorized act of Rixon in making the purchase, or if Rixon had informed him at that time that he had bought that dog and paid his money for it— for a watch dog upon the farm, and Gov. Smith afterwards upon a settlement with Rixon, knowing that Rixon had charged him

with that purchase money, had allowed it in the account, then Gov. Smith would have paid for the dog, and I should have said *that*—in law—amounted to a ratification, but unfortunately those cases are not analogous to this. I simply state them to show you or illustrate to you the difficulty in ascertaining or finding out any rule of general and universal application that can be laid down as a principle of law defining what would amount to an adoption of such an act of an agent.

This is a mixed question of law and fact Perhaps it has to be submitted to you to *determine as a question of fact whether* he adopted this unauthorizrd act of Rixon in purchasing this dog, and thus made it his property ? Now, gentlemen, what is the evidence upon the part of the plaintiff tending to show that Gov. Smith did adopt the act of Rixon ?

The other facts are sufficiently stated in the opinion of the court.

*Wilson & Hall*, for the plaintiff.

The knowledge of the defendant is shown by proving the knowledge of the agent, Rixon. Wharton on Negligence, s. 922 ; Story on Agency, s. 140 ; Wait's A. & D. 1 p. 231, s. 11, p. 316, s. 6 ; *Tuell* v. *Watson*, 47 Vt. 634 ; 2 Hilliard on Torts, pp. 436–437 ; 1 Chitty's Pl. p. 391.

Whether or not the defendant had ratified the act of Rixon in purchasing the dog and keeping it on the farm, was a question of fact, to be determined by the jury. 2 Greenl. on Ev. s. 66–67 ; Whart. on Agency, s. 87 ; *Hanks* v. *Drake*, 49 Barb. 186 ; *White* v. *Landon*, 30 Vt. 599 ; *Bank of Orleans* v. *Fassett*, 42 Vt. 439 ; Story on Agency, s. 95, 253, 255 ; *Knight* v. *Luce*, 116 Mass. 586.

*Noble & Smith* and *H. S. Royce*, for the defendant.

The decision of the court was erroneous, that the knowledge of an employe on defendant's farm was his knowledge. Shearman & Redf. on Neg. 231, n.

The facts are undisputed, and whether there was an adoption of the purchase of Rixon is a question of law, and should not have been submitted to the jury. *Remick* v. *Sandford*, 118 Mass. 102 ; 16 Vt. 498 ; *Holbrook* v. *Burt*, 22 Pick. 546 ; *Healey* v. *Utley*, 1 Cow. 345.

The defendant could not ratify the purchase until he was informed that the purchase was made for him, and with his funds, and that the purchase was unauthorized, and the jury should have been so instructed, as matter of law. Story on Agency, 251, *a;* 2 Greenl. Ev. 66.

The jury were instructed that they must carefully consider the evidence upon this question, and decide whether the defendant had ratified the purchase of the dog by Rixon, and were thus made judges of the law and the facts. This was error. *Mott* v. *McNeil,* 1 Aiken, 162; *Burrows* v. *Stebbins,* 26 Vt. 659; *Rothchild* v. *Rowe,* 44 Vt. 389; *Collamer* v. *Langdon,* 29 Vt. 32; *Driggs* v. *Burton,* 44 Vt. 124.

The opinion of the court was delivered by

Ross, J.   I.   Knowledge of the agent in reference to the matters of his agency, is the knowledge of his principal.   This is a general principle in law, and applies to the owner of a vicious animal which he has committed to the care, control and agency of another, as well as to other matters in which an agent is employed.   Hence the testimony to show that Rixon, the general agent of the defendant in the management of the farm and property thereon, had knowledge of the vicious habits and propensities of the dog, supported the allegation in the declaration, that the defendant had such knowledge, and there was no error in the admission of the same by the County Court.

The affirmative answer by the jury to the question, " Did Rixon know that the dog had attacked horses or teams while passing along in the highway, as alleged in the declaration, before the injury received by the plaintiff "? establishes all that the plaintiff was bound to establish in this respect, and renders it immaterial to determine whether the court were correct in holding that the defendant would be legally chargeable with the knowledge of the vicious habits of the dog which his other servants on the farm had.   Under the charge of the court, the defendant cannot fairly claim that he was prejudiced by this holding of the court, nor by the testimony allowed to be introduced to support it.   The legitimate tendency of that testimony was to show that the two hired

girls and the other servant knew of the dog's evil propensity, and not that Rixon did. The court is not to presume that the jury made an illegitimate use of this testimony. This testimony was also admissible to establish that the dog had this evil propensity, independently of showing that the servants had knowledge of it. Hence we find no error in the admission of the testimony objected to by the defendant.

II. Several questions are raised by the exceptions in regard to the defendant's ownership of the dog. It appeared that Rixon bought the dog with defendant's money ; but that he was unauthorized to make the purchase at the time the dog was bought. The defendant claims that there was no evidence tending to show that he ever adopted or ratified this unauthorized purchase. But we think there was, and that the court were correct in not withdrawing that question from the jury. The defendant owned the farm, stock, and all the property on the farm, and furnished all the supplies. Rixon furnished nothing ; but was employed by the defendant to manage and carry on the farm, hire the necessary help, and purchase the necessary supplies. When he saw this large dog there living on him he made no objection. When told by Rixon he purchased him for a watch dog, the natural inference would be, it was to watch the defendant's property. The reply of the defendant, that he did not strike him as a very valuable acquisition to the farm, indicates that he then considered him an appendage to or part of the farm. Taking the dog home to keep, and when he did not answer his turn, telling Rixon to take him back to the farm ; telling Rixon to dispose of the dog, or to kill him, after the injury to the plaintiff; and his failure to deny at first, if at all, that he owned the dog when called upon to settle for the injury, were all consistent with the fact of his ownership of the dog, and unnatural to a greater or less degree, with the ownership being in Rixon. There was, then, testimony tending to show an adoption or ratification of the purchase. The defendant claimed that the court should determine as a matter of law whether there had been an adoption or ratification by the defendant. This claim was upon the basis that there was no conflict in

the testimony tending to show it.   But there was a conflict in the testimony.

The defendant and Rixon did not agree in regard to what was said about killing the dog.   Neither did the plaintiff and defendant agree in regard to what the defendant said at the time the plaintiff called upon him to settle for the injury.   It was necessary for the jury to settle these controverted points.   The defendant also excepted to the refusal of the court to tell the jury whether it would in law amount to an adoption or ratification of the purchase, if they found all the facts established which the testimony tended to prove, and also to the charge on this subject. Adoption or ratification of the unauthorized purchase was a fact for the jury to find from all the other facts and circumstances which they found established tending to prove it.   It was not so much a question of law for the decision of the court, as a fact to be found by the jury from the other facts and circumstances, when considered in the light of the law defining what is an adoption or ratification of an unauthorized act of an agent by the principal. The court were correct in submitting to the jury to find whether an adoption or ratification had been established.   It was the duty of the court to instruct the jury clearly in regard to the law applicable and to be considered with reference to an adoption or ratification.   In order that a principal may adopt or ratify an unauthorized act of his agent, he must either have actual knowledge of the unauthorized act, or of such facts and circumstances as would affect a prudent man with such knowledge, and then must recognize the thing done in some way as his act.   So far as whether the defendant recognized the dog as his property, exercised acts of ownership, &c., over him, there is no reasonable ground to criticise the charge.   It is not as precise, terse, and pertinent in bringing to the attention of the jury the defendant's knowledge of the unauthorized act of Rixon in making the purchase, as the learned judge usually is.   But from the whole charge we do not think the jury could have been misled in this respect.   The two illustrations of an adoption put by the court, clearly assume such knowledge in the defendant.   In closing up his instruction in regard to the first piece of evidence relied upon,

the court say : " This is the first evidence relied upon by the plaintiff as tending to show that the defendant knew the dog was purchased for him, and adopted the act of Rixon in making the purchase." The same idea is assumed rather than fully expressed all through the charge. We do not think the charge is unsound or misleading in this respect. If the defendant had testified unequivocally that he never owned the dog, it would have been the duty of the court to have complied with his request to have the jury told that it was proper to be weighed on the question of his adoption or ratification of its unauthorized purchase. But a recurrence to his testimony shows that he did not so testify. He testified he never authorized the purchase. In closing his testimony in answer to how he testified on this subject on the former trial, he says : " I think I left it in this way—just as I design to leave it now—I think I left it then on a statement of the facts for the law to determine whether it was my dog or not ; I state my position. "And it is for the court and jury to say whether the dog was yours ?" " Yes." The request assumed what did not exist in the defendant's testimony ; and it would have been error of which the plaintiff could have taken advantage if the court had complied with it. The result is, we find no error in the proceedings of the County Court, and the judgment thus rendered is affirmed.