(Opinion published 56 N. W. Rep. 173.)

---

JOHN W. DAY et al. vs. H. C. AKELEY LUMBER Co.

Argued June 27, 1893. Affirmed Sept. 7, 1893.

**Degree of Care Required to Prevent Fire.**

One who employs the element of fire for any purpose under circumstances which render it especially dangerous to others is held to the exercise of more care and caution than is one who employs the same element for a less dangerous purpose. Yet the degree of care is the same in either case. Reasonable care, or, what is the same thing, ordinary care, only, is required; and this must be proportionate to the risks to be apprehended and guarded against.

**Negligence or Misconduct is the Basis of Liability for Loss.**

When fire used for manufacturing purposes is communicated to and destroys property belonging to another, negligence or misconduct on the part of the manufacturer must be shown in order to recover damages sustained by the person whose property has been destroyed.

**Other Alleged Errors.**

Various specifications of error considered and disposed of.

Appeal by plaintiffs, John W. Day, et al., from an order of the District Court of Hennepin County, William Lochren, J., made February 9, 1893, denying their motion for a new trial.

The plaintiffs, John W. Day and partners as J. W. Day & Co., operated a steam sawmill on the right bank of the Mississippi River in North Minneapolis, and had in connection therewith a large yard, seventeen acres, in which they piled their lumber. Adjacent on the north, the defendant, the H. C. Akeley Lumber Company, a corporation, had a similar mill and yard. These steam

mills burned their sawdust and refuse to generate steam for their engines and machinery. But all of it was not required and the surplus of sawdust, bark, shavings and refuse was conveyed to burners constructed for the purpose, and there consumed to get rid of it. The defendant had in its mill eleven boilers in one part with a smokestack of boiler iron, nine feet in diameter and over a hundred and forty (140) feet high. In another part it had four boilers with smokestack five feet in diameter. On the top of these smokestacks were nettings of wire cloth, twelve feet high, to arrest cinders and sparks. Its burner was some twenty feet distant from the mill. It stood on a stone foundation and was of boiler iron, lined inside with fire brick. It was twenty-six feet in diameter and about one hundred feet high, and covered with a dome or hood of wire netting, twenty feet high, to arrest sparks and cinders. The sawdust and refuse were carried by an endless chain or conveyor into this burner through an aperture twenty feet above the ground and fell onto a grate, covering the whole diameter and located some four or five feet above the stone base. Doors for draft opened into the burner underneath this fire grate.

On May 20, 1891, and the night following, defendants had the boilers and burner in operation. It was a dry time and the wind was from the north. About three o'clock in the morning of May 21st, the lumber in the yard of J. W. Day & Co. took fire and was consumed. The loss was adjusted at $207,134.31. That firm claimed that the loss was caused by the negligence of the defendant in the management of the fires in its burner and smokestacks, and in failing to keep the netting on their tops in repair. The firm were insured $126,500 in sixty-four different fire insurance companies. These companies paid this amount, and under provisions in the policies, had an interest in the claim and united with the firm in the prosecution of this action against the H. C. Akeley Lumber Co. to recover the $207,134.31. The issues were tried June 22, 1892. Plaintiffs asked their witness, W. H. H. Day, what in his opinion would have been the effect upon the quantity of sparks and cinders emitted from the Akeley smokestacks and burner, if defendant had turned its exhaust steam in. To this defendant objected, and the answer was excluded, and plaintiffs excepted. This is plaintiffs' fourth specification of error mentioned in the opinion. Defend-

ant had a verdict. Plaintiffs prepared and settled a bill of excep-· tions and moved for a new trial, but were denied, the court saying, among other things:

"The question asked of the witness, W. H. H. Day, as to his opinion about the effect upon the quantity of sparks and coals emitted from the Åkeley smokestack and burner which would result from turning in the exhaust steam was rightly excluded. The question called for the opinion and conjecture of the witness."

"The part of the charge objected to is that portion where, after referring to the testimony about the notice given to Mr. Akeley and Mr. Farr as to previous fires, the court added: 'I think the testimony does not show that any specific defect was pointed out to those gentlemen by Mr. Day or Mr. Robinson or any one else. But the general fact was stated to them that the property was endangered by the burner. I think there is no testimony that any specific defect either in the stacks or in the burner was mentioned or pointed out.'

"The testimony which plaintiffs claim is ignored by this portion of the charge is, that of the witness, W. H. H. Day, where he speaks of being near the Akeley burner shortly before the fire, and seeing and sending for Mr. Farr. He proceeded: 'When he came down where we were, the fuel burner, the top of it, was all of a blaze, a flame of fire going out through it, and I called his attention to it. He didn't say much about it. I says, Mr. Farr, that smokestack there, that fuel burner, is in bad shape, and something ought to be done to it. He said it was not in bad shape at all. I says, there is holes through it there, you can see it, you can see it with the naked eye. He said there wasn't any. I says, well, yesterday we had seven fires in our yard, and you didn't pay any attention to it,' etc.

"The calling of Farr's attention to the fact that a blaze was passing out through the top of the burner, was not calling his attention to any specific defect. Blaze, as well as smoke, would pass through meshes fine enough to arrest sparks. Saying it was in 'bad shape' did not call attention to any specific defect. Neither did the statement that there were holes through it, that could be seen with the naked eye. This was a mere general assertion of defective condition by having holes. It was not a mentioning,

pointing out, or calling attention to, any specific defect, any particular hole or holes. The testimony was just this, that Day told Farr that the top of the fuel burner had holes in it that could be seen with the naked eye, but did not mention or point out any in particular, and Farr denied that it had any holes. To amount to notice, the particular defect, if any existed, should have been pointed out, or mentioned in such a way as to describe and designate it, and thus had attention directed to it. The statement to the jury was therefore strictly accurate."

*R. W. Barger* and *Koon, Whelan & Bennett,* for appellants.

The court erred in refusing to give to the jury the first instruction asked by the plaintiffs, as follows: If the jury believe from the evidence that the defendant erected on its land near to the lumber yards of J. W. Day & Co. after said yards had been established and were being used as such, a refuse burner, and that said burner, on account of its nature, use and operation and essential character, was dangerous, and necessarily tended to the damage of the property of others in that immediate vicinity, and that on May 21, 1891, fire escaped therefrom and was carried by the wind upon the lumber yard of J. W. Day & Co., and there burned and consumed their lumber; then defendant is liable to the plaintiffs in this action for the value of the lumber so destroyed. *Lawton* v. *Giles,* 90 N. C. 374; *Aycock* v. *Raleigh & A. A. L. Co.,* 89 N. C. 321; *Cahill* v. *Eastman,* 18 Minn. 324, (Gil. 292;) *Mullen* v. *St. John,* 57 N. Y. 567.

Plaintiffs offered to show that immediately after the fire occurred, the defendant shut down its mill, stopped its burner, and under the direction of the building inspector of the City of Minneapolis, repaired its burner by closing the holes therein, and also placing a bell-shaped netting on their smokestacks, covering them completely. This evidence was excluded. *O'Leary* v. *City of Mankato,* 21 Minn. 65; *Phelps* v. *City of Mankato,* 23 Minn. 276; *Kelly* v. *Southern Minn. Ry. Co.,* 28 Minn. 98.

It is claimed, however, that this court overruled these decisions in *Morse* v. *Minneapolis & St. L. Ry. Co.,* 30 Minn. 465. The point there decided does not militate at all against the admission of the

evidence sought to be introduced in the case at bar. The repairs sought to be shown in this case were made immediately after the fire, and were finished within eleven days after the fire occurred. *Pennsylvania R. Co.* v. *Henderson*, 51 Pa. St. 315; *West Chester & P. R. Co.* v. *McElwee*, 67 Pa. St. 311; *McKee* v. *Bidwell*, 74 Pa. St. 218; *Dale* v. *Delaware, L. & W. R. Co.*, 73 N. Y. 468; *Emporia* v. *Schmidling*, 33 Kan. 485.

Under the circumstances the failure of defendant to discover defects in the burner, and make the same safe, amounted to gross negligence. *Hoyt* v. *Jeffers*, 30 Mich. 181; *Kendrick* v. *Towle*, 60 Mich. 363; *Parker* v. *Boston & H. S. Co.*, 109 Mass. 449.

*J. M. Shaw* and *Kellogg & Leybourn*, for respondent.

The plaintiffs' request to charge, eliminates from the case altogether the element of negligence, and places plaintiffs squarely upon the footing that the bare fact, that the fire which consumed plaintiffs' lumber, emanated from the works of the defendant, was sufficient, without more, and without regard to any allegation or question of negligence, absolutely to charge the defendant with all damages to the plaintiffs, resulting from such fire. But we cannot agree with the plaintiffs that their request is a correct statement of the law. Negligence or misconduct is the gist of the action, and this must be proven. *Batchelder* v. *Heagan*, 18 Me. 32; *Clark* v. *Foot*, 8 John. 421; *Read* v. *Morse*, 34 Wis. 315; Bishop, Non-Cont. Law, § 833; *Atkinson* v. *Goodrich Transp. Co.*, 69 Wis. 5.

Plaintiffs offered to show that, immediately after the fire occurred, the defendant, under the direction of the building inspector of the City of Minneapolis, repaired its burner and smokestacks. There is undoubtedly authority for admission of this class of evidence upon the question of negligence. There was at one time authority in this court for that proposition, but this is no longer true. *Morse* v. *Minneapolis & St. L. Ry. Co.*, 30 Minn. 465.

The defendant was bound, in the construction of this burner, to use no more than ordinary diligence, and to do no more than to adopt and put in use the most approved and tested safeguards in ordinary use in connection therewith. It had fulfilled that duty in this case, and this was shown by comparison with others which

had been before, and were then, in ordinary use for the purpose. *Montgomery* v. *Muskegon Booming Co.*, 88 Mich. 633; *Nitro-Glycerine Case,* 15 Wall. 524; *Daly* v. *Chicago, M. & St. P. Ry. Co.*, 43 Minn. 319.

Collins, J. Plaintiffs J. W. Day & Co. and defendant corporation were extensively engaged in the manufacture of lumber at Minneapolis. Their plants, operated by steam, and their lumber yards, were separated by a street only, and on the morning of May 21, 1891, fire destroyed a large quantity of lumber belonging to and piled in the yards of J. W. Day & Co. This lumber was insured, and the insurance companies, having paid the amounts due on their respective policies, are made coplaintiffs herein, the action having been brought to recover the value of the destroyed lumber. It is alleged in the complaint that the fire was caused by defendant's carelessness and negligence in the operation of its mill, and particularly that it allowed a sawdust burner, used in connection, to become so out of repair that large quantities of coals and burning brands escaped through the netting on top, and set the fire in question. This, as might be presumed, was the main question of fact on the trial of the action; but, as the action comes before us on a bill of exceptions, not on a settled case, we are not to review the evidence or to pass upon appellants' forty-ninth specification of error.

There have been fifty assignments of error made by appellants, very few of which need be referred to. The others are without merit. Taking those which require mention in the order of discussion by appellants' counsel, we first come to an instruction to the jury requested by plaintiffs which the trial court declined to give. This request eliminated from the case any consideration by the jury of defendant's alleged negligence, and planted the plaintiffs' right to recover upon grounds independent of such negligence. The fire used by defendant was for manufacturing purposes, and, if used with proper safeguards and without negligence, no liability attached for damages caused by its escape. Any other rule would make the person who uses fire for manufacturing or mechanical or propelling purposes, or even for heating, an insurer against accidents. The element of negligence—an essential element in

pleadings, as well as in proofs in cases of this nature—cannot be ignored when the cause is given to the jury. Counsel have confounded the question they argue with one relating to the burden of proof when damage is caused by fire. Doubtless, one who employs the element of fire for manufacturing, or mechanical or propelling purposes, or who employs it for any purpose under circumstances which render it especially dangerous to others, is held to the exercise of more care and caution than is one who employs the same element for a less dangerous purpose. Yet the degree of care is the same, for in either case reasonable care, or, what is the same thing, ·ordinary care, only, is required. *Read* v. *Morse*, 34 Wis. 318; *Atkinson* v. *Goodrich Transp. Co.*, 69 Wis. 5, (31 N. W. Rep. 164.) Reasonable care is all that is required, but it must be proportionate to the risks to be apprehended and guarded against. *Hoye* v. *Chicago, M. & St. P. Ry. Co.*, 46 Minn. 269, (48 N. W. Rep. 1117.) To state it briefly, negligence or misconduct is the gist of the action, and it must be proven.

All of the questions to witnesses covered by assignments of error from one to eight, inclusive, relate to the exclusion of testimony tending to show that, immediately after the fire, defendant, under the direction of the city building inspector, repaired the top of its sawdust burner. In the case of *Morse* v. *Minneapolis & St. L. Ry. Co.*, 30 Minn. 465, (16 N. W. Rep. 358,) this court, after twice holding to the contrary, concluded that evidence of this character was inadmissible and its previous rulings wrong on principle. Several cases were cited in support of the changed position, and we are satisfied that the rule last adopted is the correct one, without regard to the time when the repairs are made. Scarcely a court in the country now holds that evidence of that kind should be admitted. We cannot agree with appellants' counsel that this testimony was offered for the purpose of showing that there were holes in the netting of the burner when the fire occurred, for their argument in support of their assignments of error clearly repudiates the assertion.

What we have said in respect to the request to charge which eliminated from the consideration of the jury all question of negligence on defendant's part, as an essential element in the case, dis-

poses of several alleged errors in the charge, and the balance have been so clearly shown to be unfounded in the opinion of the learned court below when refusing plaintiffs' motion for a new trial that we can add nothing to what was there said. This last remark is applicable also to the fourth specification of error, relating to the exclusion of an answer to a question asked one of plaintiffs' witnesses.

Evidence was admitted, over plaintiffs' objection, tending to show that defendant's burner was as safe as any burner used or known. In the adoption and use of such appliances as a refuse burner, parties are not held to adopt and use appliances which are perfect. The defendant was bound to exercise care proportionate to the risks to be apprehended. It could do no more than to adopt and use the most approved and tested safeguards, and that it did was a fact perfectly proper to be shown. This could be done by comparing the burner it used with those elsewhere used in connection with sawmills, and it was not necessary to show that the situation and circumstances were precisely alike in all cases. As was said by the trial court, the kind of danger to be guarded against is the same, but the degree may differ, depending upon surroundings. The differences in situation, surroundings, and circumstances are all proper to be shown and considered when determining whether, in a given case, ordinary care has been observed in providing a burner for the consumption of refuse matter at a sawmill.

The burner in question was built under the direction of one Turnbull, who had had large experience in this work, it was claimed. One of the members of defendant corporation was asked, "What is and what had been Turnbull's reputation as to competency in this line of business?" We see nothing wrong in the ruling of the court whereby an answer to this question was allowed. It was proper for defendant corporation to show that, when erecting this burner, they employed a competent man, one of good reputation as to competency for the work. It tended to show the degree of care used by defendant.

It appears that, shortly before the fire, one of the firm of J. W. Day & Co. complained to Mr. Akeley, of defendant corporation, in respect to the condition of the netting on top of the burner, and that Akeley immediately sent for Turnbull. When testifying as to this,

v.54M.—34

the witness Akeley was asked to state what he told Turnbull he wanted done when the latter came to the mill. Akeley was permitted to answer, in effect, that he directed him to examine the burner, and, if anything could be done to make it safer, to do it. It is contended that the court below erred when receiving this answer, and again in refusing to strike it out. The evidence was proper, for it showed that a competent man was called, and told to do what plaintiffs claimed should be done. It tended to prove that defendant was not negligent in its efforts to make the burner safe, when attention had been called to its condition. We discover no error in the record.

Order affirmed.

(Opinion published 56 N. W. Rep. 243.)