## J. REUBEN ANDERSON v. HARVEY A. ANDERSON.

107 N. W. (2d) 647.

February 10, 1961—No. 38,070.

*Quinlivan, Quinlivan & Quinlivan* and *Richard R. Quinlivan,* for appellant.

*Olson & Nelson* and *Wendell Nelson,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to a verdict in favor of plaintiff.

The action was brought to recover damages for injuries sustained when plaintiff was gored by a bull owned by defendant. The facts are not seriously in dispute.

Plaintiff, who is the father of defendant, has lived all of his life on the farm where the injuries were sustained. He was 73 years of age at the time of the trial. Defendant and his family occupy one house and plaintiff and his wife another. Plaintiff and defendant operated

the farm as partners for some time, but about a year before the accident involved herein plaintiff sold his interest to defendant.

Plaintiff has had some 65 years of experience with bulls and other livestock. He had formerly been the owner of the animal in question. He regarded all bulls as dangerous. He had worked regularly with the bull in question from the time it was purchased for the farm and considered it an average bull.

Defendant was the owner of two dogs. One, named Tubby, was a shepherd trained to handle cattle and the other was a Labrador hunting dog. Plaintiff considered it dangerous to be out in the yard when the bull was loose without having Tubby present to control it. On the day of the accident, defendant had turned the bull loose in a yard adjoining the barn so that plaintiff and he could clean the bull's pen. Before they had finished cleaning the pen, defendant went into the yard to get the bull and plaintiff stayed in the barn to finish cleaning the pen. When he had finished and defendant had not yet returned with the bull, plaintiff went into the yard to find them. He left the barn by the north door and walked to a point where he could see defendant and the bull. He saw that the hunting dog was present, but he did not see Tubby, the cattle dog. Upon making this observation, plaintiff walked along a fence line a distance of some 15 to 20 feet to a point where the fence was broken down, which had permitted the bull to enter a "young stock enclosure," a yard somewhat larger than the yard adjacent to the barn. While he was still at this fence line he knew that Tubby was not present. His testimony in that regard is as follows:

"Q. Well, then, as soon as you saw the bull and Harvey and the young stock down there in the southwest corner of the yard, or enclosure, what did you do?

"A. Well, I walked over the fence, stepped over the fence, and then I seen Tubby wasn't there.

\*     \*     \*     \*     \*

"Q. At that time, you had no idea where Tubby was?
"A. No."

Plaintiff then began calling Tubby and thereafter walked over the fence into the enclosure where the bull was seen to be some 200 or

300 feet distant. A post which had once been used for a fence was located some distance inside the enclosure and, since plaintiff felt unsafe in the presence of the bull without the cattle dog, he took a position 4 or 5 feet to one side of the post thinking that it would furnish some protection. Thereafter, the bull began following a heifer, with the hunting dog running behind or to the side of the bull. Plaintiff expected that defendant and the hunting dog would chase the bull in the direction of the broken-down section of the fence, near the position which plaintiff had assumed, and he intended to assist in getting the bull out of the young stock enclosure by taking the position he did. As the bull headed toward the broken-down fence, it suddenly veered from its course and attacked plaintiff. Plaintiff was standing not more than 20 feet from the bull at the time it veered. With respect to his actions at that time, plaintiff's testimony was:

"Q. And in your opinion, Mr. Anderson, being in that enclosure with the bull without Tubby, was dangerous?

"A. Yes, we both knew that. Harvey and I knew that.

"Q. You both knew it?

"A. Yes.

"Q. And although you knew that it was dangerous to be in that enclosure with the bull, standing in the position that you were, and knowing that Tubby wasn't there, you continued to stand there, didn't you?

"A. Well, I done just the thing any father would do to his son. He'd go out there and see what help he could give.

"Q. You were helping him, I realize that, Mr. Anderson, and I appreciate it. But you knew that it was dangerous to be in that enclosure with the bull without Tubby?

"A. Yes.

"Q. And knowing that, you continued to stand there to help Harvey get this bull out of the enclosure?

"A. Well, I expected the dog, Tubby, to come."

Defendant contends (1) that the evidence is insufficient to sustain a finding that he failed to restrain the bull; and (2) that plaintiff was guilty of contributory negligence or assumption of risk in selecting a position which he knew was dangerous.

The right of recovery in this type of case rests upon a common-law liability of one who neglects to restrain an animal known to be vicious. While the decisions often speak in terms of negligence, the right of recovery, under the rule we follow, is not really based upon common-law concepts of negligence at all. In Cuney v. Campbell, 76 Minn. 59, 62, 78 N. W. 878, 879, we said:

"* * * The gravamen of the action is the neglect of the owner of an animal known by him to be vicious, and liable to attack and injure people, to restrain him so as to prevent the risk of damage. And the notice of such propensity must be such as to put a prudent man on his guard. * * * Proof of the vicious character of the animal is quite as essential in order to sustain a recovery as is proof of the scienter."

In Lee v. Seekins, 208 Minn. 546, 548, 294 N. W. 842, 844, we said:

"The gist of an action of this kind is the neglect of the owner or keeper of the animal, known to be vicious and liable to attack, to restrain it. And notice of viciousness, actual or constructive, must be such to put a prudent man on guard. [Citing cases.] Negligence is presumed where an injury follows the keeping of an animal known to be vicious."[1]

Under the common-law doctrine, proof of scienter is necessary before there can be a recovery.[2] The necessity for establishing scienter in cases involving injury by dogs has now been eliminated by statute. Minn. St. 347.22. In such cases, the strict liability of an insurer is now the rule.[3] With respect to other domestic animals, the common-law rule still prevails.

For the purposes of this decision we may assume that the evidence sustains the requisite findings of scienter and failure to adequately re-

---

[1]See, also, Hagerty v. Radle, 228 Minn. 487, 37 N. W. (2d) 819; Van Uden v. Kreuzer, 231 Minn. 290, 41 N. W. (2d) 814.

[2]Maron v. Marciniak, 165 Minn. 156, 205 N. W. 894; Olson v. Pederson, 206 Minn. 415, 288 N. W. 856.

[3]Lavalle v. Kaupp, 240 Minn. 360, 61 N. W. (2d) 228, 40 A. L. R. (2d) 540.

strain a vicious bull, although some doubt exists as to whether a farmer, who has a bull confined in a proper barnyard enclosure, should be held liable.[4]

As a defense to liability, defendant contends that plaintiff is barred from recovery because of his contributory negligence or assumption of risk. While contributory negligence in the ordinary sense will not bar recovery where liability does not rest upon negligence,[5] recovery is barred where the person injured voluntarily and unnecessarily places himself in the way of such animal. Whether this bar to recovery be called assumption of risk or something else, it is at least closely akin to the ordinary conception of assumption of risk. The leading case on this subject is Muller v. McKesson, 73 N. Y. 195, 201, 29 Am. R. 123, 126, in which the court said:

"* * * If a person with full knowledge of the evil propensities of an animal wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the *gravamen* of the offense, produced the injury."

We have at least inferentially recognized the validity of this rule in Fake v. Addicks, 45 Minn. 37, 47 N. W. 450, 22 A. S. R. 716, where we quote, with apparent approval, the above statement from Muller v. McKesson, *supra*.

The rule is stated in Restatement, Torts, § 515, as follows:

"(1) A plaintiff is not barred from recovery by his failure to exercise reasonable care to observe the propinquity of a wild animal or an abnormally dangerous domestic animal or to avoid harm to his person, land or chattels threatened by it.

"(2) A plaintiff is barred from recovery by intentionally and unreasonably subjecting himself to the risk that a wild animal or an abnormally dangerous domestic animal will do harm to his person, land or chattels."

---

[4]See, Restatement, Torts, § 509, *comment e.*
[5]See, 3 C. J., Animals, § 349; 3 C. J. S., Animals, § 150.

This rule has been generally followed in cases where the evidence justifies its application. In 3 C. J. S., Animals, § 150, we find the following:

"Where negligence is not the gist of an action for injuries caused by an animal, 'contributory negligence,' in the strict sense of that term, does not relieve defendant of liability, although it may go in mitigation of damages. In other words, something more than slight negligence or want of due care on the part of the injured party must be shown. It must be established that the injury is attributable not to the keeping of the animal but to the injured party's voluntary act in putting himself in a way to be hurt, knowing the probable consequences thereof so that he may fairly be deemed to have brought the injury on himself; but if this is shown recovery will be defeated."[6]

The facts in the case before us bring plaintiff directly within this rule. He admits that he had full knowledge of the vicious propensities of the bull involved. The following testimony shows that he knew as much about the bull as did defendant:

"Q. You were as familiar with that bull and its disposition as Harvey was, weren't you?

"A. Well, maybe not quite as much. I didn't handle him as much as Harvey did.

"Q. You didn't handle him quite as much as Harvey did, but for all practical purposes, Mr. Anderson, you knew as much about that

---

[6]See, also, 3 C. J., Animals, § 349, and cases under note 54; Molloy v. Starin, 191 N. Y. 21, 83 N. E. 588, 16 L.R.A. (N.S.) 445, 14 Ann. Cas. 57; Fye v. Chapin, 121 Mich. 675, 80 N. W. 797; Sandy v. Bushey, 124 Me. 320, 128 A. 513; Peck v. Williams, 24 R. I. 583, 54 A. 381, 61 L. R. A. 351, citing Muller v. McKesson, 73 N. Y. 195, 29 Am. R. 123, and Fake v. Addicks, 45 Minn. 37, 47 N. W. 450, 22 A. S. R. 716; Guzzi v. New York Zoological Society, 192 App. Div. 263, 267, 182 N. Y. S. 257, 260, where the court said: "The cases seem to be unanimous that no recovery can be had where the injured party unnecessarily and voluntarily puts herself in the way to be hurt, knowing the probable consequences of her act." Legault v. Malacker, 166 Wis. 58, 163 N. W. 476, 1 A. L. R. 1109; Wojewoda v. Rybarczyk, 246 Mich. 641, 225 N. W. 555; Earhart v. Youngblood, 27 Pa. 331; Gagnon v. Frank, 83 N. H. 122, 139 A. 373.

bull and its propensities and disposition as your son, Harvey, did, didn't you?

"A.   Oh, I suppose just about."

He had not only owned the bull but had handled him over a long period of time. In spite of the fact that he discovered that the cattle dog, Tubby, which he claims was the restraining and protective influence, was not in the yard when he was still in a place of safety, he ventured into the open yard where the bull, in passing in close proximity to him, had clear access to him. If he had remained by the fence or had retreated to the barn when he realized that the bull was loose and that Tubby was not in the yard, he would not have been injured, but, instead of so doing, he chose to expose himself to the danger which he knew was there, as a result of which he was injured. Under these circumstances, we are compelled to hold that he is not entitled to recover.

The trial court, in denying a motion for judgment notwithstanding or a new trial, stated in its memorandum that plaintiff knew the dangerous propensities of the bull but that he did not know that the protective dog, Tubby, was not around. That statement is not supported by the evidence. The evidence shows clearly that plaintiff, when he was in a place of comparative safety, knew that the dog was not present and began calling for him. After having knowledge thereof, he ventured into a place of danger, as a result of which the bull was readily able to reach him. On the record before us we are convinced that no other conclusion is possible but that plaintiff, with full knowledge of the dangerous propensities of the bull, exposed himself to the existing dangers and, as a result, suffered the injuries for which he now seeks to recover.

Reversed.