ANNA C. HANNABALSON, Appellant, v. GEORGE M. SESSIONS, Appellee.

**Trespass:** FORCE TO REPEL. A landowner may use reasonable and necessary force in expelling a trespasser.

WHAT MAY CONSTITUTE. One who extends her arm over a fence dividng her own premises from those of another is a trespasser, though her body remains on her own side of the fence.

*Same.* It is not trespass for one of two adjoining proprietors to hang property on a division fence erected entirely by the other.

**Evidence:** RES GESTAE. In an action for damages for assault, evidence, of a wordy quarrel between defendant and plaintiff's husband immediately preceding and leading up to the acts constituting the alleged assault was admissible as *res gestae.*

AMENDMENT BEFORE VERDICT. In an action for assault it was not error to allow defendant, before verdict, to amend his answer by alleging that he was acting in defense of his property.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

SATURDAY, APRIL 12, 1902.

ACTION at law to recover damages for an alleged assault and battery. There was a verdict and judgment for defendant, and plaintiff appeals.—*Affirmed.*

*Lindt & Mynster* for appellant.

*Jacob Sims* for appellee.

WEAVER, J.—Plaintiff and defendant live upon adjoining lots. There is frequent war between the families. The *casus belli* in the present instance is to be found in the following circumstances: Upon the boundary line between the lots is a tight board fence, a part of which was built by plaintiff's husband; but, unfortunately, this barrier, while all sufficient to prevent the passage of the dove of peace, is neither high enough nor tight enough to prevent the interchange of brick bats or the bandying of opprobious epithets. On May 30, 1898, the defendant, while at work in his garden, claimed to have narrowly escaped a brick hurled in his direction by one of plaintiff's children, and in his indignation at the unprovoked bombardment threatened the lad with arrest. Plaintiff and her husband, being at work near by, heard the threat and took up the quarrel. About this time plaintiff's husband discovered that a

ladder belonging to defendant was hanging upon a peg or block attached to the partition fence, and, conceiving this to be a cloud upon his title, he forthwith attempted to remove it, while defendant, seeing the peril in which his property was placed, rushed to its defense. Whether plaintiff herself laid violent hands on the ladder is a matter of grave dispute. She denies it, and says that the height and depth of her offending consisted in her leaning up against the fence with one arm quietly hanging over the top thereof, and in stimulating her husband's zeal by audible remarks about the "crazy fool" who was bearing down upon them from the other side. She further avers that while occupying this position of strict neutrality, the defendant assaulted her *vi et armis,* and with his clenched fist struck the arm which protruded over the fence top into his domain. Defendant denies the striking, and says that plaintiff, instead of being a peaceable and impartial observer of the skirmish, was herself a principal actor, and that in aid of her husband she climbed upon some convenient pedestal, and, hanging herself across the fence, reached down, and with malice aforethought seized the ladder and wrenched it from its resting place. Thereupon, actuated by a natural and lawful desire to protect his property from such ravishment, and being goaded on by statements from the other side of the fence reflecting upon his mother and casting doubt upon his proper rank in the animal kingdom, he gently, and without unreasonable force, laid his open hand upon plaintiff's arm, and mildly but firmly suggested the propriety of her "keeping on her own side of the fence." As is usual in cases of this kind, the testimony of the principal parties is entirely irreconcilable, and, as is also usual, each is supported by partisan witnesses in a very emphatic manner. More than a year after this alleged assault this action for damages was begun, and plaintiff swears that, as a result of the blow upon her arm, she has during all that time been sick, weak, nervous, suffering great pain and anguish, and is to a great extent, a

physical and nervous wreck. On the other hand, some of
the defendant's witnesses testify, in effect, that, whatever
may be plaintiff's bodily ills, they have existed for many
years, while others tell us that since the alleged assault they
have seen her performing outdoor labor with all the apparent
strength of an athlete. Her physician, who was a witness in
her behalf, says that, "while she is not quite so fleshy as
she was a year ago, she is still fleshy enough," and the jury,
who saw her at the trial, seem to have adopted his conserva-
tive estimate.

I. Reading the whole record in the case, one feels the
justice of the old saying that "it is not so easy to find the
truth as it is to discover the falsehood." As a rule these
petty suits are prosecuted and defended, not so much with
hope of pecuniary advantage as with desire to achieve
triumph over an enemy, and in that desire, and under such
circumstances, parties seldom fail to rise to the emergency
upon the witness stand. The common sense of the jury may,
however, ordinarily be relied upon to reach a conclusion
which works substantial justice. The issue presented here
is one of simple fact, and, the testimony being conflicting, it
was for the jury to say whether the alleged assault was com-
mitted as charged. With the verdict rendered thereon we
have neither the right nor the disposition to interfere, unless
there be found prejudicial error in the ruling of the trial
court to which exceptions have been taken.

II. Complaint is made of the overruling of plaintiff's
objections to certain questions propounded to plaintiff's
husband concerning the wordy quarrel between him and the
defendant at and about the time of the alleged as-
sault. Similar exceptions are taken to the admission
of defendant's testimony as to said conversation, and
of the previous wrangles leading up to the struggle over the
ladder. We think it was all admissible, either as part of the
res gestae or as tending to explain the conduct of the parties

on both sides at the time of the controversy immediately under consideration.

III. It is also said that the court erred in instructing the jury that, if plaintiff leaned over the partition fence and attempted to interfere with the ladder, defendant had the right to use such force upon her as was reasonably necessary to cause her to desist, and to expel her from his premises. It is claimed this instruction is wrong, not only as a matter of legal principle, but because no such defense was pleaded. As to the matter of pleading, we have to say, without attempting to decide whether this defense is not available under the general denial, that the defendant did, before verdict, amend his answer and plead specifically that he was acting in justifiable defense of his property. There was no error in permitting the amendment. The general doctrine announced in the instruction is, in our judgment, correct. The mere fact that plaintiff did not step across the boundary line does not make her any less a trespasser if she reached her arm across the line as she admits she did. It is one of the oldest rules of property known to the law that the title of the owner of the soil extends, not only downward to the center of the earth, but upward *usque ad coelum,* although it is, perhaps, doubtful whether owners as quarrelsome as the parties in this case will ever enjoy the usufruct of their property in the latter direction. The maxim, *"Ubi pars est ibi est totum,"*—that where the greater part is, there is the whole,—does not apply to the person of a trespasser, and the court and jury could therefore not be expected to enter into any inquiry as to the side of the boundary line upon which plaintiff preponderated, as she reached over the fence top. It was enough that she thrust her hand or arm across the boundary to technically authorize the defendant to demand that she cease the intrusion, and to justify him in using reasonable and necessary force required for the expulsion of so much of her person as he found upon his side of the line, being careful to keep within the limits

of the rule, *"Molliter manus imposuit,"* so far as was consistent with his own safety. Under the instructions of the court, the jury must have found that defendant kept within the scope of his legal rights in this respect, and that the alleged assault was not established by the evidence.

We are not prepared to hold with counsel that the mere fact that this particular part of the fence was built by plaintiff's husband makes defendant a wrongdoer in hanging his ladder upon it. The entire fence, by whomsoever built, being placed upon the boundary, is in a just sense, common property, and it would be an intolerable conclusion to say that neither party could touch the portion not built by himself without danger of a lawsuit. The law as it is affords sufficient opportunity for spiteful and contentious persons to harass their neighbors by strict insistence upon technical rights, and it would be little less than a calamity to establish the precedent for which appellant contends. This case is one with which the courts ought not to be burdened, and we can justify giving it the serious attention we have only in the hope that an exhibition of its petty and ridiculous features may tend to check such litigation.

The judgment of the district court is AFFIRMED.