# WILLIAM F. LEE v. E. I. SEEKINS AND OTHERS.[1]

November 22, 1940.

No. 32,506.

*Hoke, Cobb & Janes* and *Richard Manahan,* for appellants.
*A. H. Clemens,* for respondent.

[1]Reported in 294 N. W. 842.

LORING, JUSTICE.

This is an appeal from an order of the district court denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff sues to recover damages for personal injuries suffered as the result of being kicked by a horse while attending a horse sale conducted by the defendants. The defendants' answer denied their negligence and alleged plaintiff's contributory negligence. The trial resulted in a verdict of $3,000 for plaintiff.

Defendants are auctioneers who conduct various cattle and livestock sales throughout the year at a pavilion in the fairgrounds at Rochester. This pavilion is a building about 100 feet by 100 feet square with a high roof. The auction ring was near the west door and was surrounded by a board fence. Tiers of seats were erected on the north and south sides of the ring. Horses were tied to rings attached to the inside of the walls of the pavilion or kept in outside buildings.

The plaintiff is a practicing veterinary surgeon with a lifetime of experience. On the day in question, plaintiff accompanied his son to defendants' sale to advise him in the matter of purchasing horses. Horses were brought to this sale by various people and were sold at auction by the defendants. The sale of each horse was made subject to a "hitch test," the purchaser having a right to reject the horse if he was not satisfied with the way it performed on the test. The horse, if rejected, was offered for sale again, the owner of the horse having the privilege of making a "stop bid" in case the final offer did not satisfy him.

In the present case the plaintiff's son rejected a mare offered for sale by its owner, one Leon Dahle, after the hitch test had been completed. The mare was then offered for sale as a "reject," and the owner exercised the privilege of his "stop bid." On the day in question the sale closed about four o'clock p. m. About 5:30 or 6:00 o'clock

in the afternoon the unfortunate injury to plaintiff occurred. He was waiting just inside the east door of the pavilion while his son went across the street to pay for the horses he had purchased that day. Dahle's mare had been hitched in the southeast corner of the pavilion, and Dahle led her toward the east door. Dahle was stopped a few feet from the doorway by one of the defendants for the purpose of securing from him his "release slip," which indicated that the owner had paid the proper charges for expenses, etc., connected with the sale. Dahle searched his pockets and found the slip and then was engaged in conversation with another person in regard to a sale of his mare. While this conversation was going on and while Dahle was holding her with a "short halter," plaintiff was kicked by the mare.

The gist of an action of this kind is the neglect of the owner or keeper of the animal, known to be vicious and liable to attack, to restrain it. And notice of viciousness, actual or constructive, must be such to put a prudent man on guard. Fake v. Addicks, 45 Minn. 37, 47 N. W. 450, 20 A. S. R. 716; Cuney v. Campbell, 76 Minn. 59, 62, 78 N. W. 878; Erickson v. Bronson, 81 Minn. 258, 83 N. W. 988; Nelson v. Am. Ry. Exp. Co. 154 Minn. 165, 191 N. W. 405; Maron v. Marciniak, 165 Minn. 156, 205 N. W. 894; 2 Cooley, Torts (4 ed.) § 266, p. 310. Negligence is presumed where an injury follows the keeping of an animal known to be vicious. Cuney v. Campbell, supra; Fake v. Addicks, supra; 3 C. J. S., Animals, § 146, p. 1248; 3 C. J. p. 91.

Difficulty arises in determining what evidence of viciousness is sufficient to charge the owner or keeper of the animal with notice of its viciousness.

In the case at bar, the evidence relied upon by the plaintiff to show vicious propensities on the part of the mare which kicked the plaintiff rests wholly on the testimony in regard to what she did at the time that she was given

the "hitch test." Construing this evidence most favorably to the plaintiff, we find nothing more than that she "jumped, kind of bucked, and kicked up." In the opinion of one witness, she was inclined to be balky, but there was no evidence of any viciousness toward human beings or inclination to kick at any person. The mare was of a nervous temperament and excited by the surrounding circumstances, but evidence of viciousness is wholly lacking. Consequently, there was nothing to charge the defendants with knowledge of any vicious propensities on her part. They were not the owners of the mare, and she was merely brought to them to be auctioned off.

■ The plaintiff also claimed that Dahle, the owner of the mare, was in an intoxicated condition at the time that plaintiff was kicked, that he negligently led the mare through the crowd which was present at the time of the accident, and that defendants were negligent in permitting Dahle to have the custody of his horse while in that condition. Whether or not Dahle was under the influence of liquor appears to be unimportant because there seems to be no connection as cause between his intoxication, if any, and the accident. He was leading the mare from the southeast corner of the pavilion, where she had been hitched, toward the east door, and on the way met one of the defendants, who asked for the release slip. He had to search through his pockets for the slip and while he was doing so dropped the halter rope, but there is no evidence that the mare did anything vicious while the rope was down. Dahle frankly testified that he did not have hold of the horse when searching for the release but, in response to the next question asked him, stated that while he was talking with Hugh Simon, who was trying to buy the mare from him, he was holding her, and one other witness for the plaintiff (the only witness on this point) testified that he had hold of her with a "short halter." A fair construction of the testimony on the part of the plaintiff leads to the neces-

sary conclusion that the interview with one of the defendants in regard to the release preceded the discussion with Hugh Simon with regard to the purchase of the mare. This conversation occurred in the presence of a dozen or so hangers-on who remained after the sale and were interested in the talk. The plaintiff was either standing by or walking past the mare at a distance of five or six feet, which, in the opinion of the only witness who testified as an expert in regard to the matter, was too close for safety. The plaintiff was an experienced horseman, he saw the hitch test, and, while he denies that he saw the mare at all before he was kicked, the overwhelming weight of the evidence is as we have stated, and the plaintiff admits that his memory of what occurred shortly before he was kicked is not very dependable. But the issue of contributory negligence aside, we find no evidence in the record to take the case out of the rule laid down by this court in Nelson v. Am. Ry. Exp. Co. 154 Minn. 165, 191 N. W. 405, and must reverse the order of the trial court denying the motion for judgment notwithstanding the verdict, with directions to enter judgment for the defendants.

Reversed.