[Civ. No. 16482. Second Dist., Div. One. Sept. 1, 1948.]

PENELOPE JOAN FULLERTON, a Minor, etc., Appellant, v. R. G. CONAN et al., Respondents.

French & Indovina and F. Walter French for Appellant.

Crider, Runkle & Tilson and Donald E. Ruppé for Respondents.

DORAN, J.—This is an appeal from the judgment in an action for damages.

The complainant alleges that while plaintiff, a child of the age of five years, "was lawfully upon the premises consisting of defendants' yard," defendants' dog bit plaintiff "on and about the mouth, inflicting severe pain, lacerations and wounds to said plaintiff's face and flesh." The trial court found for defendants.

It is contended by plaintiff on appeal that the "judgment for respondent based on the finding that appellant was a trespasser, is without support in the evidence and should be reversed." In that connection appellant argues, "It is our contention that appellant having shown that the minor came upon respondent's property under the invitation extended to her mother the burden was cast upon respondent to show that although lawfully arriving upon the premises she subsequently did something which changed her status."

The findings recite, "The Court finds that the plaintiff had been instructed not to go into that portion of the said premises where the dog was maintained, namely, in the back yard of said premises; that notwithstanding said warning and instruction not to go in said portion of said premises, plaintiff did go therein without the permission or consent of the de-

fendant and was a trespasser therein, and that defendant was not guilty of any negligent, wilful or wanton act or conduct toward plaintiff.''

Chapter 503, Statutes 1931, page 1095, provides that, ''The owner of any dog which shall bite any person while such person is . . . lawfully on or in a private place, including the property of the owner of such dog, shall be liable for . . . damages. . . . A person is lawfully upon the private property of such owner within the meaning of this act . . . when he is on such property upon the invitation, express or implied, of the owner thereof.''

Appellant bases the within action on the foregoing provision and in that connection argues, ''In plain language, the statute provides that, if appellant came upon respondent's premises lawfully and was bitten by his dog, respondent is liable. Because the statute is clear and unambiguous, there is no room for judicial construction.

''The court's duty is to apply the statute. The definition, that one is lawfully upon the owner's property if there pursuant to express or implied invitation, leaves no room to discuss the nice distinctions between invitee, business invitee, social guest, or trespasser. Every person, other than a trespasser, comes upon premises by invitation. Any invitation is sufficient to satisfy the requirement of the statute.''

According to appellant, the question presented by the appeal is as follows:

''Was the infant plaintiff a trespasser on the premises when, while her mother called at the home, the child, in a manner not disclosed by the evidence, moved her position from a point near the back yard in the driveway where her mother had left her to a place near the back door of the house, or was she upon the respondent's 'property upon the invitation, express or implied, of the owner thereof'?''

And again, ''The sole question is whether appellant was lawfully on respondent's property.''

The only witnesses were the mother of the child and the doctor who treated the laceration. Mrs. Fullerton, the mother, testified as to the occasion for the visit, ''I was picking up my mother who had spent the night with her''; that the two families had been friends for years; that they had visited back and forth for ''quite a period of time.'' As to the children, Mrs. Fullerton testified, ''I left them outdoors. I did not bring them in the house.'' That the children were left

in the driveway where the car was parked; and in reply to the following questions, testified as follows:

"Q. On the driveway? And going into the back yard is a gate, is there not? A. Yes.

"Q. That gate when you arrived was closed? A. Yes.

"Q. And the children were on the side of the gate where the car was when you last saw them? A. Yes."

Mrs. Fullerton also testified that the children were told to stay in the front yard, which testimony appears in the transcript as follows:

"Q. Did Mrs. Conan see the children before the occasion of this incident that you have told us about? A. Truthfully, I don't know, but I would say when she came to the door she saw them.

"Q. As a matter of fact, didn't she state to you, or to the children, to play around, but not go in the back yard where the dog was? A. No, I was the only one who would ever say that to them.

"Q. Did you say that? A. I asked them to stay out in the yard.

"Q. You asked them to stay out of the yard? A. Out in the yard on the side there.

"Q. Out in the front? A. Yes.

"Q. What was the occasion of telling them that? A. I just naturally do that when I go any place."

The questions submitted by appellant, as noted above, confuse the issue because they are unqualified. To be properly presented they must include the qualification as the statute provides, namely, "within the meaning of this act." Although the words "property" and "invitation" are comprehensive terms, it does not follow that the legislative intent in connection with their use is without limitation. Therefore, whether the child was "lawfully upon the private property" of another as contemplated by the act in question depends upon its meaning and effect and what it is intended to include.

It should be noted at the outset that gates and doors have been the generally accepted means of indicating privacy for centuries; their use for such a purpose is traditional and is still sanctioned by universal custom. A gate is a barrier just as a door to a home; both in effect are notifications that what is beyond them is private. And it must be assumed that when gates and doors are a part of the property involved they represent such a purpose. Nor is an invitation without limitation. It would be presumptuous indeed to assume that a social

invitation includes authorization or permission to ignore the customary formalities and establish by judicial decision that such an invitation includes the right, as a matter of law, to enter without observing the customary formalities.

As the testimony of the mother recited above indicates, the child was left in the yard unattended. Although there is no direct evidence as to just what happened, the inference is warranted that the child opened the gate and entered the back yard. Manifestly, the host was not responsible for such conduct on the part of the child. And, in that connection, it should be emphasized that the responsibility of the mother for the welfare of her child does not shift to the host upon a visit by the mother and child to the latter's residence.

In the circumstances here presented, "The owner of any dog which shall bite any person" is liable only when such person is, "lawfully upon the private property of such owner." The conclusion reached by the trial court that the child was a "trespasser" simply means that the child was not lawfully upon the property of the dog owner at the point where the biting occurred. And the findings in this regard are supported by the evidence. Whether the child or the mother were lawfully upon the property at other points is beside the issue. The owner of a dog is not an insurer.

 It is also contended that the court erred in rejecting plaintiff's "offer to show that upon prior visits the dog had been roaming at will in and about the premises." As respondent points out, "There certainly cannot be any materiality to the fact that on previous times the dog was elsewhere. The only question involved is what happened on this particular day and when did it happen; not what happened at some other time or place."

For the foregoing reasons, the judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied September 20, 1948, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1948. Edmonds, J., and Carter, J., voted for a hearing.