ERIK MATSON, BY HIS FATHER AND NATURAL GUARDIAN, ROBERT MATSON, AND ANOTHER v. RUDOLPH KIVIMAKI.

200 N. W. 2d 164.

July 14, 1972—No. 43267.

142

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, R. D. Blanchard,* and *J. Richard Bland,* for appellant.

*Mast & Sweetman* and *Hugh Sweetman, Jr.,* for respondents.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Gunn, JJ.

TODD, JUSTICE.

Plaintiff Erik Matson, a minor, was bitten by a dog belonging to defendant, Rudolph Kivimaki. Erik and his father, plaintiff Robert Matson, brought this action for damages. The matter was submitted to the jury under instructions which included consideration of Minn. St. 347.22, the so-called "dog-bite statute," and, alternatively, determination of common-law liability of defendant. The jury returned a general verdict, assessing damages for the injuries sustained by the minor child and allowing recovery of medical expenses to plaintiff Robert Matson. Defendant appeals from an order of the trial court denying his alternative motion for judgment notwithstanding the verdict or for a new trial and from the judgment. We reverse.

The incident which gave rise to plaintiffs' claim occurred on September 5, 1968. At that time, plaintiff Erik Matson was a minor child of the age of 2½ years and resided with his parents at 2774 Dellwood Avenue, Roseville, Minnesota. The plaintiffs' next-door neighbors to the north are Jerry and Dee Scheve. Immediately abutting plaintiffs' property to the east is the property of a Dr. Gutzman, which fronts on Merrill Street. Immediately north of the Gutzman property and directly east of the Scheve property is the property of defendant, which also fronts on Merrill Street. Since there is no alleyway, the four properties have a common point of tangency at the center of their location.

In 1957 defendant constructed a 4-foot high wooden fence which completely enclosed his backyard. At the time of the construction of the fence, defendant, who was employed by the Minnesota Highway Department, secured the assistance of two friends, both of whom are registered civil engineers, to survey his property lines for purposes of installing the fence. It is un-

contradicted in the evidence that the fence line is installed 6 inches within the property line of defendant as it abuts the Scheve property on the westerly boundary of defendant's property.

Plaintiff Robert Matson had purchased his property less than one year prior to the accident. The evidence indicates that plaintiffs and defendant were acquainted as neighbors, but there was no particular social contact between the families. There is no evidence that Erik ever played in the yard of defendant; his parents had expressly told him not to go into defendant's yard. Communication with the minor child at the time of the accident was limited by reason of the fact that he had a substantial hearing loss as a result of a birth defect.

There is some evidence that on occasion some of the neighborhood children did enter the yard of defendant, but Mr. Kivimaki's uncontradicted testimony is that, because of the substantial difference in age between his children and most of the other children in the neighborhood, the other children did not often come onto his property.

Defendant was the owner of a 4-year-old female springer spaniel named Ruffles, who had been a family pet since she was a month old. The dog was not trained or used as a watch dog. She stood 2 to 2½ feet tall at the shoulders and weighed 40 to 50 pounds and was kept either in defendant's house or his backyard. The dog could not crawl through defendant's fence. Although Robert Matson testified that on occasion he had seen the dog charge toward the fence, barking at children playing in adjoining yards, there is no evidence that any of the neighbors, including plaintiffs, ever complained to defendant about his dog.

At the farm of Mrs. Kivimaki's parents in 1967, Ruffles had nipped the hand of defendant's niece. About a year later, in the summer of 1968, Ruffles nipped the hand of defendant's nephew. In one of those cases there was no breaking of the skin, while in the other case the child's hand was scratched. The evidence

is uncontradicted that both incidents occurred while the children were playing with the dog. Defendant knew of the incidents.

Between 4:15 and 4:30 p. m. on September 5, 1968, defendant's son, John, who was about 14 years of age at that time, went to the kitchen for a drink of water. While standing in the kitchen looking out the rear window, he observed Erik leaning through the lower boards of defendant's rear fence where it abutted the Scheve property, with approximately half of his body through the fence. John also observed the family dog, Ruffles, lying on the ground next to the fence, apparently sleeping. He testified that Erik was waving his hands in the direction of the dog, but could not say for sure whether Erik actually struck the dog. John then testified that the dog jumped up, bit Erik in the face area, and then ran back toward the house. John ran outside and scolded the dog and then waited for his mother and father to come home to tell them of the incident, as neither of them was there at the time.

At the time of the incident, Betty Matson, Erik's mother, was in her kitchen cooking. One of the Gutzman children came to the door and informed her that Erik had been bitten by the dog. She went into the back yard and observed Erik coming toward the house crying and bleeding from the area of the right eye. Medical treatment was obtained for Erik. Evidence adduced at the trial as to the damages sustained by Erik, as well as the medical damages sustained by Robert Matson, which were stipulated to, would justify the amount of the verdict returned.

It is unquestioned that Erik suffered real and serious injury. However, we conclude that under the law applicable herein, plaintiffs are not entitled to recover from defendant.

■ Plaintiffs rely on the well-known rule of law in this court that on any appeal the evidence must be viewed in the light most favorable to the prevailing party, and if there is any evidence whatsoever on which a jury could reasonably have based its decision, the verdict must stand. Coenen v. Buckman Building Corp. 278 Minn. 193, 197, 153 N. W. 2d 329, 333 (1967); Mc-

Cormack v. Hankscraft Co. Inc. 278 Minn. 322, 325, 154 N. W. 2d 488, 492 (1967).

■ Applying this general rule of law to the instant case, it must be kept in mind that the matter was submitted to the jury on two separate theories of recovery, namely, the statutory right of recovery under Minn. St. 347.22, the dog-bite statute, and the right of recovery permitted by the common law. We will treat each of these separately, but it should be noted that the use of a general verdict in this type of case without the submission of special interrogatories creates extreme difficulty for an appellate court since the factual basis for applying each theory of recovery is substantially different. We strongly urge the use of a special verdict or a general verdict with interrogatories in the submission of this type of case to a jury.

■ Minn. St. 347.22 provides:

"If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be in any urban area, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term 'owner' includes any person harboring or keeping a dog. The term 'dog' includes both male and female of the canine species."

This statute was adopted by our legislature in 1951. Prior to that time, the only right of recovery for an injury to a person resulting from a dog bite was that established under the common law.[1]

In submitting the statute to the jury, the trial court properly instructed as to the elements to be considered as follows:

"Now under this statute if the plaintiff proves the following elements the Plaintiff Erik Matson is entitled to recover damages. The elements are four and they are as follows:

---

[1] An earlier statute covered situations where a dog killed, wounded, or worried domestic animals. Our court held that this statute was not applicable to harm done to human beings. Olson v. Pederson, 206 Minn. 415, 288 N. W. 856 (1939).

"First, it must be shown that the defendant's dog, without provocation, attacked and injured Erik Matson.

"Secondly, it must be shown that at said time Erik Matson was peaceably conducting himself.

"Thirdly, it must be shown that at the time Erik Matson was at a place where he may lawfully be.

"Fourthly, it must appear that the area in question was an urban area.

"Under the facts as determined in this lawsuit you are hereby instructed that the area in question was an urban area, and therefore this particular element or the last one is concluded in favor of the plaintiff. It's for you, however, as members of the Jury to determine from the facts as you find the facts to be whether or not the plaintiff has proved to you the other three elements."

Under the evidence in this case, it was proper to submit the first two elements to the jury. However, we hold that it was improper to submit the statutory question to the jury for consideration in this case, since there is no evidence that would justify a finding that Erik was lawfully in a place he was entitled to be at the time of the incident.

In making this determination as a matter of law, we have carefully reviewed the entire record in this case and find no evidence whatsoever which would allow an inference of an implied invitation for Erik to project his body through defendant's fence onto defendant's property. In constructing a substantial fence, defendant clearly manifested an intent to circumscribe his property with a barricade to increase both his right of privacy and his right to use his own property without interference from others. The fence not only served to keep others out, but permitted defendant to give his dog a limited amount of freedom while still containing the dog on his own property.

The California District Court of Appeals in Fullerton v. Conan, 87 Cal. App. 2d 354, 197 P. 2d 59 (1948), in considering a similar statute, had occasion to consider the question of what

constitutes being lawfully on the premises.[2] In that case, plaintiff was a 5-year-old minor child, who had been taken by her mother to visit a family friend. The friend's home had a fenced-in backyard. The child was left outside with instructions to stay in the front yard while the mother went inside. Apparently, the child opened a gate in the fence, entered the backyard, and was bitten by the dog. Summarizing the plaintiff-appellant's argument, the court there wrote (87 Cal. App. 2d 356, 197 P. 2d 61) :

"Appellant bases the within action on the foregoing provision [of the statute quoted in footnote 2] and in that connection argues, 'In plain language, the statute provides that, if appellant came upon respondent's premises lawfully and was bitten by his dog, respondent is liable. Because the statute is clear and unambiguous, there is no room for judicial construction.

" 'The court's duty is to apply the statute. The definition, that one is lawfully upon the owner's property if there pursuant to express or implied invitation, leaves no room to discuss the nice distinctions between invitee, business invitee, social guest, or trespasser. Every person, other than a trespasser, comes upon premises by invitation. Any invitation is sufficient to satisfy the requirement of the statute.' "

---

[2] The applicable California statute at that time, while not exactly the same as the Minnesota statute, contained the same general language in requiring that a person be lawfully on private property in order to recover for injuries sustained as a result of a dog bite. Cal. Stat. 1931, c. 503, § 1, provided: "The owner of any dog which shall bite any person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness. A person is lawfully upon the private property of such owner within the meaning of this act when he is on such property in the performance of any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States of America, or when he is on such property upon the invitation, express or implied, of the owner thereof."

The court, however, went on to hold (87 Cal. App. 2d 358, 197 P. 2d 62):

"* * * Although there is no direct evidence as to just what happened, the inference is warranted that the child opened the gate and entered the back yard. Manifestly, the host was not responsible for such conduct on the part of the child. And, in that connection, it should be emphasized that the responsibility of the mother for the welfare of her child does not shift to the host upon a visit by the mother and child to the latter's residence.

"In the circumstances here presented, 'The owner of any dog which shall bite any person' is liable only when such person is, 'lawfully upon the private property of such owner.' The conclusion reached by the trial court that the child was a 'trespasser' simply means that the child was not lawfully upon the property of the dog owner at the point where the biting occurred."

We hold in this case that there is not sufficient evidence to justify a finding that Erik was in a place where he was lawfully entitled to be at the time of the incident of the bite by defendant's dog and that it was error to submit to the jury for its consideration the question of statutory liability.

 We must next consider whether there is any evidence viewed in the light most favorable to plaintiffs that would justify a finding of common-law liability of defendant.

We have previously indicated and now hold that the creation of statutory liability did not abolish the common-law right of recovery. Lavalle v. Kaupp, 240 Minn. 360, 364, 61 N. W. 2d 228, 231 (1953). The general rule regarding liability of the owner of a domestic animal under the common law is set forth in 3 C. J. S., Animals, § 148:

"Generally the owner of a domestic animal is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the individual animal different from the species generally if he has no notice of such disposition. Hence, if the injury has resulted from the exercise of a vicious

propensity, which is not natural to the class of animals to which the offending animal belongs, the owner or keeper of the animal is usually not liable if he did not have previous knowledge or scienter of the vicious propensity, or could not have ascertained the same by the exercise of reasonable care, unless there has been negligence * * * or * * * the animal was wrongfully in the place where the injury was inflicted. On the other hand, if the animal, to the knowledge of the owner, is vicious, he must keep it safely or respond in damages for injuries resulting from a display of its known propensities; and * * * it is often held that the liability thus imposed is in no way dependent upon the existence of negligence, although there is also authority to the contrary."

Our court in Fake v. Addicks, 45 Minn. 37, 38, 47 N. W. 450, 451 (1890), set forth the general common-law requirements for recovery as follows:

"The *gravamen* of the action is the neglect of the owner of an animal, known by him to be vicious and liable to attack and injure people, to restrain him so as to prevent the risk of damage; and the notice of such propensity must be such as to put a prudent man on his guard."

Shortly thereafter, in Cuney v. Campbell, 76 Minn. 59, 62, 78 N. W. 878, 879 (1899), the court emphasized that two separate elements were involved:

"* * * Proof of the vicious character of the animal is quite as essential in order to sustain a recovery as is proof of the scienter."

The language of both these cases was again cited with approval in Anderson v. Anderson, 259 Minn. 412, 415, 107 N. W. 2d 647, 649 (1961), where we said:

"The right of recovery in this type of case rests upon a common-law liability of one who neglects to restrain an animal known to be vicious. While the decisions often speak in terms

of negligence, the right of recovery, under the rule we follow, is not really based upon common-law concepts of negligence at all."

■ In submitting the question of common-law liability of defendant to the jury in this case, the trial court paraphrased the so-called "attractive nuisance" instruction appearing in Minnesota Jury Instruction Guides, Instruction 328, substituting the words "vicious dog" for the phrase "structure or other artificial condition" and instructing the jury as follows:

"Aside from this statute that I have read to you it is the law of our state that a possessor of land is subject to liability for bodily harm done to trespassing children caused by a vicious dog kept on said premises if four conditions exist:

"One, the place where the condition is maintained is one upon which the defendant knows or has reason to know that children are likely to trespass.

"Secondly, the condition is one in which the defendant knows or has reason to know of and which he realizes or should realize would involve an unreasonable risk of serious bodily harm to children.

"Thirdly, the children because of their youth at the time of the event did not discover the condition or realized the risk involved in meddling with or coming within the area made dangerous.

"And fourth, the usefulness of the defendant in keeping the dog is slight as compared with the risk to the children involved.

"If the four elements above are proved to you and you find that Erik Matson's injuries were a direct result of the dog bite, then Erik Matson is entitled to recover damages against the defendant, and you will then address yourself to the question of damages which I'll discuss later. If these four conditions are not found by you to exist, then your verdict should be for the defendant."

Defendant objected to these instructions and requested the

trial court to submit the case in accordance with the rules of Restatement, Torts, §§ 511, 512. These sections provide as follows:

Section 511. "Except as stated in §§ 512 and 516,[3] a possessor of land is not liable to a trespasser thereon for harm done to him by a wild animal or an abnormally dangerous domestic animal kept by the possessor thereon although

"(a) the possessor has not exercised care to keep the animal under control, and

"(b) the trespasser has no reason to know that such animal is kept upon the land."

Section 512. "A possessor of land who has reason to know that trespassers constantly intrude upon a limited area thereof is subject to liability for harm done to them while within such area by a wild animal or an abnormally dangerous domestic animal which he so keeps as to endanger such trespassers, unless he has exercised reasonable care to warn them of the presence of the animal."

The type of instruction used by the trial court finds support in Restatement, Torts 2d, Tent. Draft No. 10 (1964), § 512, which would completely eliminate the present § 512 quoted above and would substitute in its place the following language:

"512. LIABILITY TO TRESPASSERS FOR NEGLIGENCE

"The rules as to the liability of a possessor of land to a trespasser on the land for the possessor's negligence in failing to prevent harm to the trespasser from a wild animal or an abnormally dangerous domestic animal kept on the land, are the same as for artificial conditions on the land."

In *Comment c* under the proposed revision, it is stated: "If

---

[3] Restatement, Torts, § 516, provides: "A possessor of land or chattels is privileged to employ a dog or other animal, for the purpose of protecting his possession of land or chattels from intrusion, to the same extent that he is privileged to use a mechanical protective device for such purposes."

the trespasses of children are reasonably to be expected, the defendant may be required to exercise reasonable care to protect them from the animal, under the rule stated in § 339." Restatement, Torts 2d, § 339, which applies to artificial conditions on land, provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The trial court's instructions essentially included all but paragraph (e) of § 339.

As a rule of general application, we hold that it is improper under the decisions in Minnesota to include in these instructions a comparison between the utility of keeping a domestic animal and the risk to the children involved. In Clark v. Brings, 284 Minn. 73, 169 N. W. 2d 407 (1969), we rejected the criterion of usefulness of an animal in determining the issue of liability.

The "attractive nuisance" type of instruction given by the trial court was also deficient in that it not only failed properly to instruct the jury regarding the term "vicious dog," but it also

did not properly instruct the jury that its function included determining whether the dog was vicious. Taking the instruction as a whole, it presumed that the dog was vicious. In this case, the only evidence of vicious propensities of this dog were the two previous occasions involving a nipping of the hands of defendant's nephew and niece while they were playing with the dog. It is uncontradicted that defendant knew of these incidents. The only other evidence which might tend to establish viciousness was the uncorroborated testimony of plaintiff Robert Matson that he had on occasion observed the dog charge toward the fence, barking at playing children. There is no evidence that defendant knew anything about these alleged situations, and it is uncontradicted that plaintiff Robert Matson did not communicate his observations to defendant prior to the time of the injury to his son.

In Clark v. Brings, *supra,* this court had occasion to discuss common-law right of recovery and the evidence necessary to establish viciousness of a domestic animal. That case involved an injury from a bite by a pet cat. The evidence established that the cat had once before bitten a baby sitter while she was playing with the cat and that the cat had scratched several members of the defendant's household. These incidents occurred while someone was playing with the cat. In that case, we held (284 Minn. 82, 169 N. W. 2d 412):

"It is true that a pet's owner need not 'have notice that the animal has frequently "broken through the tameness of his nature" into acts of agression,' and that the notice is sufficient should the animal just once 'throw off the habits of domesticity and tameness, and * * * put on a savage nature.' Kittredge v. Elliott, 16 N. H. 77, 81 [1844]. 'It is not true, as has often been stated, that "the law allows a dog his first bite," for if the owner has good reason to apprehend, from his knowledge of the nature and propensity of the animal, that he has become evilly inclined, the duty of care and restraint attaches.' Cuney v. Camp-

bell, 76 Minn. 59, 62, 78 N. W. 878, 879 [1899]. Here, however, the testimony shows that the cat was provoked and excited by play when it inflicted the first injury, and the authorities universally hold that '[s]uch an attack is no evidence of viciousness in the animal * * * and is insufficient to render the owner liable * * *.' Erickson v. Bronson, 81 Minn. 258, 259, 83 N. W. 988 [1900]; Lee v. Seekins, 208 Minn. 546, 294 N. W. 842 [1940]; Lawlor v. French, 2 App. Div. 140, 37 N. Y. S. 807 [1896]; McHugh v. Mayor of City of New York, 31 App. Div. 299, 52 N. Y. S. 623 [1898]. At best, to say that this bite 'was vicious is merely conjecture,' and the testimony thus cannot withstand a motion for a directed verdict. Eastman v. Scott, 182 Mass. 192, 194, 64 N. E. 968, 969 [1902].

"The evidence that the cat had several times scratched respondents themselves, their children, and their other babysitters is scarcely more significant. The cat usually scratched them on their hands, it appears, when they were picking it up or playfully handling it. We would agree that it is the mere dangerousness of an animal's character, and not any intentional malevolence, which must be proved to render its owner liable—that the 'propensity is vicious if it tends to harm, whether manifested in play or in anger, or in some outbreak of untrained nature which, from want of better understanding, must remain unclassified.' Hill v. Moseley, 220 N. C. 485, 489, 17 S. E. (2d) 676, 678 [1941]; Crowley v. Groonell, 73 Vt. 45, 50 A. 546 [1901]; Evans v. McDermott, 49 N. J. L. 163, 6 A. 653 [1886]. But many of these incidents of scratching would seem necessarily to be excused as provoked, under the rule discussed *supra;* in any event, injuries of so slight a nature as those shown, unaccompanied by any indications of a propensity of the cat to cause greater harm, are inadequate to prove that it was dangerous and ought to have been caged or destroyed. Maron v. Marciniak, 165 Minn. 156, 205 N. W. 894 [1925]; Goodwin v. E. B. Nelson Grocery Co. [239 Mass. 232, 132 N. E. 51 (1921)]; Merkle v. Schaeffer, 80 N. J. L. 74, 76 A. 326 [1910]."

Applying the same reasoning to the evidence in this case, there is no basis for submitting to the jury the question of the viciousness of this dog. Consequently, under the common-law theory of negligence, taking the findings of the jury most favorable to plaintiffs, we assume there was no provocation on the part of Erik as he approached the sleeping dog on defendant's property. The actions of the dog in this situation, however, were more in the nature of a reflex action than part of a continued course of vicious conduct known to defendant.

Under the facts and evidence of this case, we hold that plaintiffs are not entitled to recover either under the statute or under the common law; therefore, we reverse the decision and remand to the trial court with instructions to enter judgment for defendant. Neither party is allowed costs on this appeal.

Reversed.