GERALD L. KENNEY, FATHER AND NEXT FRIEND OF DEBBIE L. KENNEY, A MINOR, APPELLEE, V. ROBERT J. BARNA, APPELLANT.

341 N.W.2d 901

Filed December 9, 1983. No. 82-737.

Gerald L. Friedrichsen of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant.

Michael G. Helms of Schmid, Ford, Mooney & Frederick, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This was an action brought by the plaintiff, Gerald L. Kenney, father and next friend of Debbie L. Kenney, a minor, under Neb. Rev. Stat. § 54-601 (Reissue 1978), the "dogbite" statute. The jury returned a verdict for the plaintiff in the amount of $607. The trial court sustained the plaintiff's motion for a new trial on the basis of inadequacy of the verdict.

The defendant has appealed and has assigned as errors that the trial court denied his motion for a directed verdict, made at the close of all evidence, on the ground that Debbie was a trespasser and that the verdict was in fact not inadequate.

On November 24, 1978, Debbie, who was then 7 years old, went with her mother to visit Debbie's great-grandmother who lived in Omaha. Living next door to her was the defendant, Robert J. Barna, who owned a dog. Barna's yard was enclosed all around with a wire fence which was 6 feet high and had 2- by 4-inch rectangular openings. In addition, he had built a kennel, or dog run, within the fenced-in area, utilizing the boundary fence on the side of his yard adjacent to the yard of Debbie's great-grandmother as one of the outside lines of the kennel.

Debbie testified that she was given permission to go out to play, and while outside she reached through the fence and tried to pet the dog "three or four times . . . and it bit me." She also testified that she had petted this dog once or twice before that day, but she admitted that she had never seen Mr.

Barna, nor had she asked anyone on the defendant's premises whether she could pet the dog.

Mr. Barna testified that he never did allow the dog to be outside of the kennel enclosure unless he was in the backyard, nor did he ever allow any children to play with the dog unless he also was outside. There is nothing in the record to suggest that Debbie ever had permission to reach through the fence and pet this dog or that the defendant was aware of the fact that she or any children had done so in the past.

The statute, § 54-601, provides in part that "the owner or owners of any dog . . . shall be liable for any and all damages that may accrue (1) to any person, *other than a trespasser*, by reason of having been bitten by any such dog . . . ." (Emphasis supplied.) The defendant argues that the plaintiff was a trespasser, and therefore there was no liability to her under the statute. In ruling adversely to the defendant's contention, the trial judge stated: "I think in this case that there may have been a technical trespass by Debbie Kenney when she put her hand through the fence, but I don't think it's that type of technical trespass that is contemplated by the statute." Therefore, the key question which we must answer is whether the plaintiff was a trespasser within the meaning of the statute.

A trespasser is a person who enters or remains upon premises in possession of another without the express or implied consent of the possessor. *Malolepszy v. Central Market*, 143 Neb. 356, 9 N.W.2d 474 (1943).

But what of the age of the alleged trespasser? "While the age of the child will not protect him from liability if his act is denominated a trespass, yet as trespass is an intentional tort an initial determination must be made whether the child concerned formed the intent to do the physical act which released the harmful force." *Cleveland Park Club v. Perry*, 165 A.2d 485, 488 (Mun. Ct. App. D.C. 1960).

In an action for damages resulting from a tres-

pass, it is not necessary that the trespasser intended the injury resulting from his unauthorized invasion, but only that such person intended to commit the physical act constituting the trespass. " 'Accordingly, where the only intention necessary to the commission of the tort is to perform the physical act in question, as in trespass to property or person, it seems settled that even an infant of quite tender years may be held liable. . . .' " *Brown v. Dellinger*, 355 S.W.2d 742, 746 (Tex. Civ. App. 1962).

In that case a money judgment had been entered against the two appellants, who were between the ages of 7 and 8 years, because of a fire causing damage to the appellee's premises. The boys entered the premises without authorization and built a fire in a portable grill. This fire ignited a curtain which in turn burned down the garage, house, and contents. The Texas court said: "We hold that the record is conclusive that the minor appellants unquestionably became trespassers as a matter of law when they ignited the fire in the charcoal grill in appellee's garage.

. . . .

"The acts of the minor defendants in bringing matches onto the premises of appellee and igniting the fire in the charcoal burner in appellee's garage were all voluntary and purposeful and were acts which they even at their tender years had sufficient capacity to do, as evidenced by the fact that they did do such acts." *Id*. at 746-47.

Minnesota has a "dogbite" statute which subjects a dog owner to liability for damages done by a dog to any person who is peaceably conducting himself in any place where he may lawfully be. In *Matson v. Kivimaki*, 294 Minn. 140, 200 N.W.2d 164 (1972), a boy, aged 2½ years, leaned through the lower boards of the defendant's rear fence, waved his hand at the defendant's dog, and it jumped up and bit him. The trial court awarded general damages to the child.

The Supreme Court reversed, holding that it was error to permit the jury, by instruction, to consider one of the elements necessary to attach liability to the dog owner, i.e., that the plaintiff was at a place where he may lawfully be. The court said: "However, we hold that it was improper to submit the statutory question to the jury for consideration in this case, since there is no evidence that would justify a finding that Erik was lawfully in a place he was entitled to be at the time of the incident.

"In making this determination as a matter of law, we have carefully reviewed the entire record in this case and find no evidence whatsoever which would allow an inference of an implied invitation for Erik to project his body through defendant's fence onto defendant's property. In constructing a substantial fence, defendant clearly manifested an intent to circumscribe his property with a barricade to increase both his right of privacy and his right to use his own property without interference from others. The fence not only served to keep others out, but permitted defendant to give his dog a limited amount of freedom while still containing the dog on his own property." *Id.* at 146, 200 N.W.2d at 167-68.

The Minnesota court cited a California District Court of Appeal case, *Fullerton v. Conan*, 87 Cal. App. 2d 354, 197 P.2d 59 (1948), which considered a similar statute. That case involved a 5-year-old child who opened the gate in the defendant's fence, walked into the backyard, and was bitten by the defendant's dog. The court said: "The court, however, went on to hold (87 Cal. App. 2d 358, 197 P. 2d 62):

. . . .

" 'In the circumstances here presented, "The owner of any dog which shall bite any person" is liable only when such person is, "lawfully upon the private property of such owner." The conclusion reached by the trial court that the child was a "trespasser" simply means that the child was not law-

fully upon the property of the dog owner at the point where the biting occurred.' '' *Matson* at 148, 200 N.W.2d at 168-69.

The plaintiff relies almost exclusively on the holding and language of *Verrilli v. Damilowski*, 140 Conn. 358, 100 A.2d 462 (1953). Connecticut has a statute similar to that under consideration here, which excludes damages to the body of a person who at the time was committing a trespass or other tort. The plaintiff in that case was crossing the premises of the defendant "on a right of way which had been used by the public for several years." *Id.* at 359, 100 A.2d at 463. The court discussed in some detail the development of the statute and its prior decisions, which it concluded influenced the legislative changes.

The language in which the plaintiff takes comfort is as follows: '' 'The trespasses and torts which the framers of this exception had in mind were those which were committed upon the person or property of the owner or keeper, or of his family, and other torts of a like character, and which the dog, with his characteristic loyalty, would instinctively defend and protect, and those torts committed upon the dog to which we referred in *Kelley v. Killourey*, supra, as likely to excite a dog to the use of its natural weapons of defense.' . . .

''. . . 'The expression "trespass or other tort" in the statute suggests more than a mere entry and the plain intent of the statute is to bar recovery where the plaintiff was committing or intending to commit some injurious act.' '' *Id.* at 363-64, 100 A.2d at 464.

However, we would point out that the case of *Kelley v. Killourey*, 81 Conn. 320, 70 A. 1031 (1908), referred to above, involved a court-interpreted limitation on the original absolute liability statute, when the victim was teasing and tormenting the dog. The latter paragraph of the above quotation was taken from *Hanson v. Carroll*, 133 Conn. 505, 52 A.2d 700 (1947), in which the plaintiff had come onto the defendant's

property to inquire about some fertilizer advertised for sale. Apparently, he would not be a trespasser.

We conclude that the *Verrilli* case and the authorities cited by it are distinguishable from the instant case, both on the facts and the interpretation of legislative intent.

Perhaps a case more nearly in point, not cited by anyone, is *McCarthy v. Daunis*, 117 Conn. 307, 167 A. 918 (1933). However, in that case the dog was confined by a fence containing 6-inch squares. A large police dog so confined stuck his head through one of the openings, grabbed a small dog on the outside of the fence, pulled it against the fence so that the small dog's collar became entangled in the wire, and it was left suspended above the ground. The plaintiff, a boy passing on a bicycle, heard the small dog whining, and stopped to free it. As he was in the process of doing so, the defendant's police dog ran up to the fence, *thrust his jaws through the fence*, and bit off the end of one of the plaintiff's fingers. The court held that the plaintiff was not a trespasser within the meaning of the statute. However, the facts of that case are also clearly distinguishable. Not only did the boy not reach through the fence but, in fact, it was the dog who actually did the trespassing.

Nor does the instant case fit within the purview of *Rossi v. DelDuca*, 344 Mass. 66, 181 N.E.2d 591 (1962). That case laid out the doctrine of an "incomplete privilege." An 8-year-old plaintiff was chased onto the defendant's property by a stray German Weimaraner, whereupon she was bitten by the defendant's Great Dane. In an opinion which supported the position of the plaintiff, the court said: "This evidence brings the case, we think, within the principle that one is privileged to enter land in the possession of another if it is, or reasonably appears to be, necessary to prevent serious harm to the actor or his property." *Id.* at 70, 181 N.E.2d at 593.

This court has not yet been called upon to deal

with the question of who are trespassers under the "dogbite" statute. In *Donner v. Plymate*, 193 Neb. 647, 228 N.W.2d 612 (1975), we held that the words "killing, wounding, worrying, or chasing" as used in § 54-601 excluded the playful and mischievous acts of dogs. However, importantly, we did state: "The Legislature . . . removed the common law restriction of proving scienter or knowledge of the dangerous propensities of dogs, but only as it applied to the actions of dogs specified in the statute," *id*. at 649, 228 N.W.2d at 614; and "Dog owners are statutorily liable for any and all damage without proof of scienter or knowledge of dangerous propensities of their dog for biting . . . persons," *id*. at 650, 228 N.W.2d at 614.

In *Paulsen v. Courtney*, 202 Neb. 791, 277 N.W.2d 233 (1979), a 10-year-old boy was bitten by the defendant's dog. The defense was provocation and that the boy was a trespasser. The jury returned a verdict for the defendant, and we affirmed on the ground that there was evidence to support the verdict as to provocation. We pointed out that § 54-601 eliminated the common-law requirement that before the dog owner would be liable, he must have been guilty of negligence or had knowledge of the dog's propensity for viciousness.

We went on to say: "It is, however, a recognized rule of construction that statutes which effect a change in the common law or take away a common law right should be strictly construed . . . ." *Id*. at 794, 277 N.W.2d at 235. We concluded that although the statute creates a cause of action based upon strict liability on the part of a dog owner, "Nevertheless, it would seem strange indeed if one could now intentionally provoke a dog under any circumstances and yet hold an owner liable under the provisions of the 'dog bite' statute." *Id*. at 795, 277 N.W.2d at 235. We declared that the question of whether the victim was guilty of intentionally provoking the animal was a question of fact.

In the same manner, we believe that the word "trespasser" as used in the statute must be construed strictly. Again, "it would seem strange indeed" if a dog owner, knowing that he is held strictly accountable for the actions of his dog, keeps the dog confined to his own property, yet could be held liable to one who came on the premises without permission. A person can trespass on another's property by extending his arm over the boundary fence. *Hannabalson v. Sessions*, 116 Iowa 457, 90 N.W. 93 (1902); Restatement (Second) of Torts § 159, Illus. 3 to subsection (1) (1965).

Because the act constituting the trespass itself must be a willful act, the question presents itself as to whether the plaintiff in this instance was of sufficient age and maturity so as to possess the capacity to form such intent. Although dealing with the applicability of the doctrine of attractive nuisance, we said in *Haden v. Hockenberger & Chambers Co.*, 193 Neb. 713, 228 N.W.2d 883 (1975), that a person on the premises of another without the permission of the owner, who is of sufficient age, mentality, experience, and ability to observe, is an adult trespasser.

In *Camerlinck v. Thomas*, 209 Neb. 843, 312 N.W.2d 260 (1981), we held that as to contributory negligence, if the actor is a child, the standard of conduct to which such child must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under the circumstances.

In this instance the trial court was in error in holding as a matter of law that the plaintiff was not a trespasser and that the defendant was liable for the plaintiff's injuries. The jury should have been instructed that the defendant would not be liable if the plaintiff was a trespasser, and further instructed as to the definition of "trespasser," including the element of intent.

We affirm the action of the District Court in grant-

ing a new trial, but for reasons different from those declared by the trial court.

AFFIRMED.