*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0813**

Jewel Eskew, et al.,
Appellants,

vs.

Darrell Luhmann,
Respondent.

**Filed March 2, 2026
Affirmed
Bentley, Judge**

Olmsted County District Court
File No. 55-CV-24-196

William L. French, French Law Office, Rochester, Minnesota (for appellants)

Steven E. Tomsche, Samantha P. Flipp, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bentley, Presiding Judge; Frisch, Chief Judge; and Worke, Judge.

**NONPRECEDENTIAL OPINION**

**BENTLEY**, Judge

Appellant Jewel Eskew was butted, pinned, and injured by a cow while working at respondent Darrell Luhmann's farm. This case comes before us on appeal from summary judgment for Luhmann on Eskew and his wife's resulting negligence and loss-of-consortium claims. Because we agree with the district court that no genuine issues of

material fact exist, the grant of summary judgment in Luhmann's favor was proper. We therefore affirm.

## FACTS

The following facts, taken from the summary-judgment record and stated in the light most favorable to appellants, frame our consideration of the issues raised on appeal. Luhmann owns and operates a third-generation dairy farm. Eskew worked for Luhmann as a farmhand from July 2021 until March 2022.[1] Eskew's primary duty in that position was to help milk the cows, though he completed additional tasks for Luhmann when needed.

Eskew had worked as a farmhand previously, including for several years on a beef cattle farm. Based on that experience, Eskew was aware of possible risks working with cows and that it was necessary to take care while performing that work.

One day, when Eskew was working on Luhmann's farm, Luhmann asked him to feed the cows because the farmhand who normally did so was absent. When Eskew went to the pen to feed the cows, he noticed a newly born calf. The calf and one cow were standing apart from the other cows in the pen. Eskew then crawled into the pen and walked around the cow. Because we view the record in the light most favorable to Eskew on review, we accept his testimony that he crawled into the pen because one of his job duties

---

[1] On appeal, Eskew argues that he was an employee of the farm, and not an independent contractor. His complaint alleges the contrary—that he was an independent contractor—and he has not identified any material in the summary-judgment record to support his contention that he was an employee. Regardless, for purposes of our analysis we assume without deciding that he was an employee.

was to determine which cow had calved. He determined that the cow he walked around had not given birth to the new calf.

When Eskew walked past the cow, it rammed into him multiple times, slamming him into the wall of the surrounding structure and knocking him to the ground. The attack lasted approximately five minutes with Eskew unable to get away until a farm dog ran over and distracted the cow. During the attack, Eskew used his cell phone and headset to try to call Luhmann for help multiple times, including leaving a voicemail, and yelled for someone around to help.

After the incident, Luhmann came across Eskew sitting near the pen. Luhmann asked what happened and Eskew responded that a cow knocked him down and indicated which one had done it. Eskew went to the hospital and was treated for his injuries. He had broken all but one of his ribs, suffered a collapsed lung, and has experienced lingering pain and mobility problems with his shoulder. Eskew required extensive surgery on his ribs and the collapsed lung and suffered significant complications, including chronic lymphedema. Because of his injuries, Eskew was off work from March 2022 through early September 2022.

Eskew and his wife, appellant Stephanie Eskew, filed this lawsuit in December 2022, claiming negligence and loss of consortium as a result of the negligence. Both Luhmann and Eskew testified during their respective depositions that they were unaware of any instances of a cow on Luhmann's farm causing trouble or acting violently.

After discovery, Luhmann moved for summary judgment. In an order and accompanying memorandum granting the motion, the district court concluded there were

3

"no genuine issues of material fact as to any of the bases for negligence." More specifically, the district court determined that, for a "scienter action" for domesticated animals, Eskew was required to prove the cow had a vicious propensity known to Luhmann but that "there are no genuine issues of material fact regarding either the vicious propensity of the cow involved in this incident or [Luhmann's] knowledge of the cow's dangerous propensities." The district court further determined that Eskew cannot establish a common-law negligence claim because Eskew's injuries were not reasonably foreseeable. The district court similarly granted summary judgment to Luhmann on the loss-of-consortium claim.

Eskew and his wife appeal.[2]

## DECISION

This is an appeal from a summary judgment. Summary judgment is proper if the moving party shows, by citing to specific parts of the record, that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01, .03(a). A genuine issue of material fact exists "when reasonable persons might draw different conclusions from the evidence presented." *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 372 (Minn. 2022) (quotation omitted).

Appellate courts review a grant of summary judgment de novo. *Bell v. St. Joseph Mut. Ins. Co.*, 990 N.W.2d 504, 507 (Minn. App. 2023), *rev. denied* (Minn. Aug. 8, 2023). That means we consider "whether there are any genuine issues of material fact and whether the court erred in its application of the law." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn.

---

[2] Because the loss-of-consortium claim is derivative of the negligence claim, we focus our analysis on the negligence claim.

2001). In doing so, we "view the evidence in the light most favorable to the nonmoving party." *Schroeder v. Simon*, 985 N.W.2d 529, 535-36 (Minn. 2023) (quotation omitted).

An individual bringing a negligence action may recover for injuries caused by a domesticated animal on either of two bases.[3] *See Ryman v. Alt*, 266 N.W.2d 504, 507-08 (Minn. 1978). The first basis is known as a "scienter action" and the second is a claim of common-law negligence. *Id.* at 506, 508.

We address each basis for relief in turn.[4]

# I

We begin by analyzing Eskew's negligence claim under the scienter theory of liability. A "scienter action" permits an individual to recover from an animal's keeper if they are "injured by a domestic animal," and they prove that "(1) the animal had a vicious propensity, and (2) the animal's keeper had notice of the vicious propensity." *Ryman*, 266 N.W.2d at 506. Applying that standard, the district court concluded that there were no genuine issues of material fact remaining that would allow a jury to find that Luhmann knew of the cow's vicious propensity. We agree with the district court.

---

[3] Cows and cattle are domestic animals for these purposes. *See generally Anderson v. Anderson*, 107 N.W.2d 647 (Minn. 1961) (treating a bull as a domestic animal and applying the scienter standard for liability).

[4] Luhmann argues that "negligent training" is not a recognized cause of action in Minnesota and that Eskew assumed the risk of injury. We decline to reach those arguments because Eskew did not argue a claim of negligent training on appeal and the case can be resolved without deciding whether Eskew assumed the risk of his injuries. *See Minn. Baptist Convention v. Pillsbury Acad.*, 74 N.W.2d 286, 296 (Minn. 1955) ("Under well-settled rules the court refrains from deciding, where it is unnecessary to do so, constitutional and other legal questions.").

Knowledge of an animal's vicious propensity is "usually found to have been gleaned from specific acts of the animal prior to the injury sued upon," but may also attach if the owner has some other good reason to apprehend the vicious propensity. *Clark v. Brings*, 169 N.W.2d 407, 409 (Minn. 1969). A plaintiff must also show that the vicious propensity is specific to the individual animal because "[g]enerally the owner of a domestic animal is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the individual animal different from the species generally if he has no notice of such disposition." *Matson v. Kivimaki*, 200 N.W.2d 164, 169 (Minn. 1972) (quotation omitted).

The summary-judgment record is devoid of evidence that Luhmann was aware of any vicious propensity of the cow that attacked Eskew. To the contrary, Luhmann stated in his deposition testimony that he had never experienced any similar instances of aggression or violence by any of his cows in his many decades farming and that he had never had any trouble with the specific cow in this case. Eskew did not identify any evidence that would create a genuine issue of material fact on that point, even acknowledging in his deposition that he was unaware of any such incidents with any of the cows on Luhmann's farm.

Rather than focus on whether Luhmann knew about the vicious propensity of the cow involved in the attack, Eskew states more generally that "[w]orking with cattle can be very dangerous." To demonstrate this dangerousness, he cites a book about livestock production, references Luhmann's deposition admission that "a farm can be a very dangerous place," and points to evidence that Luhmann usually uses multiple people and a

Bobcat to move a new calf. Such generalities about the dangerousness of farm work, however, are insufficient to establish a genuine issue of *material* fact because they do not demonstrate that Luhmann knew that the cow involved in the attack had a disposition "different from the species generally." *Id.*

Because the record contains no evidence that the cow involved in the attack had a vicious propensity or that Luhmann knew or had reason to know of such propensity, the district court did not err in granting summary judgment for Luhmann on a scienter theory of negligence. *Ryman*, 266 N.W.2d at 506.

**II**

Next, we assess whether Eskew's claims survive summary-judgment review under a theory of common-law negligence. *See id.* at 508 (recognizing "a cause of action for injuries inflicted by a domestic animal based entirely upon the negligence of the animal's owner or keeper"). To prove a common-law negligence claim against the keeper of a domestic animal, a plaintiff must show that (1) the defendant had a duty; (2) the defendant breached that duty; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff was in fact injured. *Boitz v. Preblich*, 405 N.W.2d 907, 911-12 (Minn. App. 1987). Negligence is typically determined by a jury or fact-finder,

> except in those cases where it clearly appears to the trial court, after accepting the view of the evidence most favorable to the adverse party including all reasonable inferences to be drawn therefrom, that it would be its duty to set aside a contrary result as not justified by the evidence or as contrary to the law applicable to the case.

*Peterson v. Pawelk*, 263 N.W.2d 634, 636 (Minn. 1978) (quotation omitted).

7

Eskew posits that Luhmann was negligent in two respects. First, he argues that Luhmann had a duty to warn Eskew about the dangers of going into a cow pen when other people are not present. Second, Eskew argues that Luhmann had a duty to answer his phone when Eskew called for help. We begin with Eskew's duty-to-warn theory and then address Eskew's duty-to-answer theory.

**A**

To establish the employer's duty-to-warn for purposes of a common-law negligence action, "[a]n employee injured by his employer's animal usually must prove, much as in the scienter action, that the employer had prior notice of the beast's vicious propensity." *Clark*, 169 N.W.2d at 414. Without prior knowledge, a plaintiff must allege and prove "some special circumstances which would in its stead have put a prudent employer on guard for his employee's safety." *Id.*[5]

For reasons already articulated, we conclude that Eskew failed to prove Luhmann had notice of any "vicious propensity" of the cow at issue. *Id.* Eskew also has not established the presence of any "special circumstances" that would have put Luhmann "on

---

[5] Eskew advocates that we should decline to follow *Clark* and instead should consider whether Luhmann, "as a possessor of land," had a duty to warn Eskew "of dangers and to instruct him on safety," irrespective of the cow's vicious propensity. For that premise, he relies on *Berg v. Johnson*, 90 N.W.2d 918, 921 (Minn. 1958), which held that "[t]he duty of a master to warn and instruct his employees of the dangers and risks involved in his employment is absolute and nondelegable." *Berg* does not alter our analysis. In order to warn an employee of dangers involved in the work, the employer must have had reason to know that the danger existed. *Clark* is controlling because it instructs how courts should determine whether an employer had notice of a potential danger presented by a domestic animal. *See Clark*, 169 N.W.2d at 414 (noting that the duty attaches when the employer had prior knowledge of the animal's vicious propensity or when special circumstances are present that placed the owner on notice of the potential for dangerous behavior).

guard for [Eskew's] safety." *Id.* Eskew argues that the particularly dangerous nature of farm work is a "special circumstance," and that Luhmann's failure to answer his phone while Eskew was being attacked was a "special circumstance." Neither is the kind of circumstance contemplated by *Clark*.

*Clark* references cases from other jurisdictions to offer some guidance as to what constitutes a "special circumstance" in this context. *See id.* (citing *Finley v. Conlan*, 136 N.Y.S. 565, 566 (N.Y. App. Div. 1912), and *Flynn v. Lindenfield*, 433 P.2d 639, 641-42 (Ariz. Ct. App. 1967)). In *Finley*, the relevant special circumstance was that the defendant knew his horse had a sore that might cause it to kick if pressed by the horse's harness. 136 N.Y.S. at 566. So, even if the horse did not have a vicious propensity, the owner's awareness of the sore put him on notice that the horse might react if the sore was irritated. *Id.* In *Flynn*, the special circumstance was that the defendants left their property, which included a horse corral, in the care of a young babysitter who was inexperienced with horses. 433 P.2d at 641-42. The court left it for a jury to decide whether the defendants had a duty to warn the babysitter that their mare may protect her colt. *Id.* at 642. No similar facts exist here that demonstrate any special circumstances which may have alerted Luhmann that the cow would act dangerously or that Eskew was particularly vulnerable to attack. To the contrary, dealing with cows and calves is a routine part of operations on Luhmann's farm and Eskew provided no evidence that Luhmann's cows had a history of acting aggressively to protect calves or otherwise. The record shows that Eskew was an experienced farmhand who had worked with cows and cattle before and who knew that it was necessary to be careful around them. And there is no dispute that the cow that attacked

Eskew had not given birth to the nearby calf and so, even if we were to assume that a cow protecting its calf is a special circumstance contemplated by *Clark*, that was not the circumstance here. In sum, the general dangerousness of cattle and the failure to answer a phone during the incident at issue are not special circumstances that establish Luhmann had a duty to warn Eskew of the danger in entering the pen.

Because Eskew did not establish that there is a genuine issue of material fact as to whether Luhmann had notice of the "vicious propensity" of the cow or as to whether a "special circumstance" existed under *Clark*, the district court's grant of summary judgment on his duty-to-warn theory was proper. 169 N.W.2d at 413-14.

**B**

We now turn to Eskew's argument that Luhmann was negligent for failing to answer his phone as Eskew was calling for help. Here, Eskew had to establish that Luhmann owed Eskew a duty to answer the phone. *See Boitz*, 405 N.W.2d at 912. Whether someone owes a duty in any given circumstance depends on whether injury to the plaintiff is foreseeable. *Austin v. Metro. Life Ins. Co.*, 152 N.W.2d 136, 138 (Minn. 1967) ("The common-law test of duty is the probability or foreseeability of injury to plaintiff."). "Foreseeability of injury is a threshold issue related to duty that is ordinarily properly decided by the court prior to submitting the case to the jury." *Domagala v. Rolland*, 805 N.W.2d 14, 27 (Minn. 2011) (quotation omitted).

Eskew argues that, because farms are dangerous places, Luhmann should have known he needed to answer his phone when Eskew called multiple times within five minutes. Whether a plaintiff's injury is foreseeable, however, depends on "whether the

10

specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009). That is, we must assess whether the specific dangers here—the cow attack and resulting injuries—were objectively reasonable to expect, not whether such an attack was within the realm of possibility. *See id.* Under the circumstances here, Eskew has not established that it would be objectively reasonable for Luhmann to expect the cow attack would occur or that his failure to answer his phone during the five-minute attack would have contributed to Eskew's injuries. We therefore conclude that Eskew has not established that Luhmann owed a duty to Eskew to answer his phone. Again, for that reason, the grant of summary judgment was proper.

**Affirmed.**